## WARREN v. TERRITORY OF HAWAII.
### No. 9506.

Circuit Court of Appeals, Ninth Circuit.
May 19, 1941.

Charles B. Dwight, of Honolulu, T. H., for appellant.

Chas. E. Cassidy, Public Pros., and Kenneth E. Young, Deputy Public Pros., both of Honolulu, T. H., for appellee.

Before DENMAN, MATHEWS, and HEALY, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal from a judgment of the Supreme Court of the Territory of Hawaii affirming a judgment of the Circuit Court of the First Circuit of the Territory of Hawaii of conviction for manslaughter by the procuress of a house of prostitution in Honolulu, who caused the death by electrocution of a police officer in the course of an attempt by the Honolulu Police Department to suppress that institution.

The mores of Hawaii proscribed such an institution and made its maintenance a misdemeanor.* It was particularly a menace as a place for the dissemination of venereal disease and perversion of sex because maintained near a camp of some 8,000 United States soldiers. The evidence is convincing that after an attempted police suppression a year before the appellant-procuress reopened her brothel and sought to frustrate such future interference by installing a high voltage electrical current connecting with a copper lattice-like plate on the door of the "house." By a switch which she could operate, she could send through the body of a policeman who touched the copper lattice in seeking entrance the high voltage current. The apparatus she first caused to be installed was insufficient in its shock and she had the transformer changed to increase its intensity. There is evidence from which the jury could infer that the procuress knew of the dangerous character of her device to resist the law officers. The evidence that the brothel keeper's device was aimed specifically at the Police Department is not the less significant because shown to be aimed also at possible burglars, there having been a previous burglary, and against drunken soldiers, who, lured there by the vicious persons she had gathered, might struggle to open or pound against the door.

The Police Department suspected the reopening of the brothel and sent one of its officers to investigate. This officer sought admission which was granted by the procuress, who sent one of her prostitutes to admit him. This prostitute took the officer to her room where she received the customary "professional dishonorarium" and sufficiently confirmed the Department's suspicion of the commission of the misdemeanor. By prearrangement, other officers were nearby, who, upon being advised by the police whistle of the officer inside that he needed assistance in making an arrest, were to enter. He seized the prostitute who had solicited him and blew his whistle, going to the front door to open it, when the procuress forcibly attempted to prevent him. He saw her arm extended inside the casing of another door leading upstairs where she made a downward motion of her hand, which later proved to have opened the switch and turned the high voltage current into the copper lattice outside the entrance door and into the officer's body.

Hearing the police whistle indicating need of assistance, one of the officers outside, finding the entrance door would not open took hold of the copper lattice to pull it towards him. The electrical current passed through his body and killed him. The point of electrical contact was the officer's burned thumb.

■ The police looked about after the door was opened by the officer inside and saw the wiring which led from the door to the transformer of the high voltage current. With the probable likelihood that someone still concealed in the house had committed one manslaughter and might commit another, the police entered the brothel the next day, found the lethal contrivance and removed its continuing menace by taking out the transformer and wiring. Such an entry is legal and the removal of such a continuing death trap from the prohibited brothel we regard as a normal police function.

■ Appellant's counsel earnestly urges that although his client was the keeper of a brothel, nevertheless the brothel was her "home"; and that the officer who entered it with her permission entered by "stealth" within the principles established in Gouled v. United States, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647, and Blanchard v. United States, 5 Cir., 40 F.2d 904, 905, certiorari denied, 282 U.S. 865, 51 S.Ct. 40, 75 L.Ed. 765. However, it is plain that the "stealth" contemplated in these two cases could not consist of a guest's failure, upon his hostess' invitation into her home, to state to her that he did not want her to furnish him a prostitute for his entertainment. Though a brothel keeper is nonetheless within the protection of the Fourth Amendment concerning "unreasonable searches and seizures," the provision does not suspend one's reasoning powers in determining—here on the fact of the invitation to enter—what search is unreasonable. Lambert v. United States, 9 Cir., 282 F. 413, 417.

---

*Section 6310 of the Revised Laws of Hawaii; see also sections 6241 and 6238.

938

Appellant's counsel likewise earnestly urges that when, as a member of the Police Department, the officer who was permitted entry made certain it was a house of prostitution and attempted an arrest and blew a whistle which by prearrangement meant to other nearby members of his Department that they now knew for a certainty that the house was such a brothel, and that he needed assistance in making an arrest, the assisting officer knew these facts "only by hearsay" and hence that he was a trespasser when the procuress' fatal electric trap was sprung on him. We cannot agree with this contention and deem the whistle as an equivalent of the officer coming to the window and showing the struggling woman to his associates outside and saying to them, "See, I have this struggling prostitute resisting arrest." However, had the responding officer been such a trespasser, nonetheless his killing by such an instrument constituted the crime of manslaughter. State v. Beckham, 306 Mo. 566, 267 S.W. 817, 37 A.L.R. 1094; State v. Countryman, 57 Kan. 815, 48 P. 137; State v. Patterson, 45 Vt. 308, 12 Am.Rep. 200; Bray v. State, 16 Ala. App. 433, 434, 78 So. 463; 35 Yale L.Jour. 525-547; 9 Col.L.Rev. 720-722.

On the objection of the defense, the trial court refused to admit the killing device itself, which was removed by the police the day after the crime. The defense sought also to suppress the evidence of the denizens of the brothel and of the procuress' agent concerning its installation and character, on the ground that the removed wiring and transformer had been displayed to them in their interrogation by the police shortly after the killing of the officer. It was claimed that the source of the evidence of these persons was their surprise in seeing the wiring and transformer in the possession of the police. We are of the opinion that, since, without a search warrant, it was the duty of the police to enter the brothel on proper suspicion of the commission of the crime of manslaughter by the electrical device wired to the door, and also their duty to remove the menacing death trap, there was no illegal search and subsequent seizure of that contrivance. Having it thus legally in their possession it was normal police duty to use it to obtain the evidence to produce conviction of the criminal.

However, assuming the device had been improperly seized and removed, its use by the police before the denizens of the brothel and the electrician does not deprive the Territory of its right to show that it was used by appellant to kill the officer. Here the police knew immediately after the manslaughter, and before the second entry when the device was removed, that the officer had been electrocuted and that his hand had touched a copper plate on the door connected by electric wiring elsewhere. Knowledge thus independently gained would inevitably lead at the trial to the examination of the denizens disclosing the installation by appellant of the entire device. Moreover, each denizen testified at the trial concerning the electrocuting device that her testimony was based on her independent recollection of its actual installation and was not based on what she saw at the police station.

What is seen and heard, even on an illegal entry, may be made the basis of a questioning for evidence. Olmstead v. United States, 277 U.S. 438, 465, 48 S.Ct. 564, 72 L.Ed. 944, 66 A.L.R. 376. And knowledge of facts gained from a proper independent source such as here obtained may be used, though it also may be obtained from an illegal act. Silverthorne Lumber Co. v. United States, 251 U.S. 385, 392, 40 S.Ct. 182, 64 L.Ed. 319, 24 A.L.R. 1426.

In view of our holding that the electrocuted policeman lawfully took hold of the copper door plate and that even had his contact been that of a trespasser his killing by the electrical trap was manslaughter, it is unnecessary to consider whether certain instructions concerning the right of entry of police officers to make an arrest on suspicion of the commission of a misdemeanor are violative of the Federal Constitution.

Appellee contends the appeal was taken too late and that we have no jurisdiction to consider it. The appeal here was not taken within three months from the entry of the Hawaiian supreme court's judgment. There was a petition for rehearing before that court filed within time under a court rule giving an unconditioned right to file it within 20 days after the filing of that court's opinion. There was also a court rule requiring the issue of the mandate forthwith on the decision of a criminal case. The mandate was issued before the petition was filed. The court had the power to recall it, on its own motion or that of the losing party. It was not recalled. The court in dismissing the petition stated, "Although without jurisdiction to pass upon the merits

of the motion for rehearing, we have carefully examined it and entertain no doubt that were it properly before us for consideration we would be compelled to deny the petition for lack of merit." The appeal here was taken within three months of the dismissal of the petition. Since the court had the power to recall the mandate, we regard its admitted consideration of the merits an entertainment within the rule of Chicago Great Western Ry. Co. v. Basham, 249 U.S. 164, 167, 39 S.Ct. 213, 63 L.Ed. 534; Northern Pacific R. R. Co. v. Holmes, 155 U.S. 137, 138, 15 S.Ct. 28, 39 L.Ed. 99; The Astorian, 9 Cir., 57 F.2d 85; Thomas Day Co. v. Doble Laboratories, 9 Cir., 41 F.2d 51, and hence have given the merits the above consideration.

Judgment affirmed.