UNITED STATES of America,
Plaintiff-Appellant,

v.

James BUSH and Reva Finchum Bush,
Defendants-Appellees.

No. 13976.

United States Court of Appeals
Sixth Circuit.

Sept. 28, 1960.

Rehearing Denied Oct. 31, 1960.

John F. Dugger, Asst. U. S. Atty., Knoxville, Tenn. (John C. Crawford, Jr., U. S. Atty. and James M. Meek, Asst. U. S. Atty., Knoxville, Tenn., on the brief), for appellant.

Hobart F. Atkins, Knoxville, Tenn., for appellees.

Before McALLISTER, Chief Judge, THORNTON and KENT, District Judges.

McALLISTER, Chief Judge.

The government appeals from an order of the District Court sustaining appellees' motion to suppress evidence, on the ground that it was illegally obtained, in a prosecution for possession and concealment of non-tax-paid whiskey, in violation of Title 26 U.S.C.A. § 5008(b), and § 5632.

The facts are as follows: On June 4, 1958, Raymond Hahn, a Federal Alcohol Tax Officer from Chattanooga, Tennessee, proceeded to a beer tavern in Knoxville, Tennessee, accompanied by an informant, and there met Willie Yates, who agreed to go with them to the residence of James Bush and Reva Bush, his wife, in Sevier County, Tennessee, for the purpose of purchasing moonshine whiskey. Upon their arrival at the Bush home, Investigator Hahn, accompanied by Yates and the informant, drove into the driveway of the Bush premises, a distance of about forty feet from the street, and stopped in front of the garage on the property. Mr. Bush was standing in the yard at the time, about six feet from where the car stopped. He was alone, and Yates started a casual conversation with him, afterward telling him that they had come to buy liquor. Bush replied that he did not handle liquor; that he did not have any; and that he did not know the three men. Shortly afterward Mrs. Bush came along and Bush "wandered off to the side," but stayed within hearing distance while they talked to Mrs. Bush for a few minutes. Yates tried to make Mrs. Bush

believe that she knew him, and told her names of people "he was kin to"; but she did not recognize him, and after thoroughly questioning him, could not recall his ever having been at her home, or who he was. She then went onto the porch and into the kitchen of the house. Shortly afterward, she came back and questioned them again as to the people they knew. They apparently did not satisfy her as to their having mutual acquaintances, but in the course of their talk, they told her that they wanted the liquor for their own use, for a party. After a conversation of perhaps ten minutes at the back of the house, she finally said: "I will show you what I have got," and invited Investigator Hahn into the kitchen, the other men following. They all went in through the back porch, which was glassed in, and went into the kitchen. Mrs. Bush then reached up in a closet and removed two one-half gallon jars. One of them had a white liquid in it, and the other, a colored liquid; and she set them on the sink, and took the tops off.

Investigator Hahn said that each of the two jars was about half full; that he sampled the first one, which was white whiskey, and the second one, which was colored, and thereafter told her that they wanted approximately a case. She informed them that the white whiskey was $30.00 a case and the colored, which was aged whiskey, was $40.00 a case; but she told them that because she was not personally acquainted with any of them, she was afraid to sell it; and that they would have to bring somebody back whom she knew before she would sell them the whiskey. They were there about thirty minutes.

Five days later, on June 9, 1958, Investigator Hahn returned with the informer, and engaged in another long conversation with Mrs. Bush in an effort to buy whiskey from her. There was the same futile endeavor to persuade her that she should sell them the whiskey, and the mention of people whom they both knew. She, however, stated that her husband had become angry with her

for showing them the whiskey the first time they were there, and, accordingly, she refused to sell to them.

On June 9, 1958, Hahn executed an affidavit for a search warrant reciting the facts as to what he had observed on his first visit in the Bush home on June 4; a search warrant was, thereafter, issued, on this affidavit, on June 9; and, on June 13, Investigator Griffin and other officers executed it, and found approximately 9½ gallons of non-tax-paid whiskey in appellees' home. The District Court, on motion of appellees' counsel, sustained the motion to suppress the evidence, on the ground that it was illegally obtained as a result of information secured while trespassing on appellees' property on June 4. It was held that the search and seizure were made following entry of the Bush home by means of fraud and stealth, and that such a search and seizure were unreasonable and in violation of the Fourth Amendment. United States v. Mitchneck, D.C.Pa., 2 F.Supp. 225, United States v. Reckis, et al., D.C.Mass., 119 F.Supp. 687, and that a search and seizure based on information secured through an entry gained by false misrepresentations are illegal. Fraternal Order of Eagles, etc. v. United States, 3 Cir., 57 F.2d 93.

It is the claim of appellees that the information upon which the search warrant was based was obtained by unlawful search; and it is the rule that where such information has been obtained through use of some element of force or coercion, actual, threatened, or implied, a search or seizure based thereon is unreasonable, and in violation of the Fourth Amendment, which is directed against unreasonable searches and seizures; and it has been held that an entrance by stealth upon a person's property is equivalent to an entrance by force and, therefore, unreasonable.

However, the distinction has been drawn between a search warrant obtained as a result of information secured through force, coercion and stealth, and one obtained by an officer's concealment

of his identity, and his posing as a member of the general public.

Investigator Hahn, in his conversation with Mrs. Bush, told her his name was Ray, which was true since his full name was Raymond Hahn; and he further told her that he worked in a foundry in Knoxville—which was not true.

The issue, therefore, is whether Investigator Hahn was such a trespasser on appellee's property, and, by misrepresentation, gained access to her home by such stealth, as to render the search unreasonable, and the search warrant void. Many misrepresentations as to the identity of the person making a search have presented close questions as appears from the language used in various opinions of the Supreme Court and other federal courts. Thus, where officers pose as members of a lodge to gain access to premises, or where a federal agent pretended to be a repairman for a still, it was held that access was gained by stealth, and that the searches were unreasonable. Fraternal Order of Eagles No. 778, Johnstown, Pa. v. United States, 3 Cir., 57 F.2d 93; and United States v. Reckis, D.C.Mass., 119 F.Supp. 687. To like effect is United States v. Mitchneck, D.C.Pa., 2 F.Supp. 225, where officers posed as refrigerator salesmen, represented that they had mutual acquaintances, and produced a fictitious note purportedly signed by a former employer of the defendant, stating that the officers were his friends. In Gouled v. United States, 255 U.S. 298, 41 S.Ct. 261, 264, 65 L.Ed. 647, it appeared that a private in the Army, acting under direction of an officer in the Intelligence Department of the Army, went to defendant's office, pretending to make a friendly call on the defendant, gained admission to his office, and in his absence and without his knowledge, stole and removed several documents. The Supreme Court held that the entrance was made by stealth, equivalent to an entrance by force and ruled that the documents were inadmissible because obtained in violation of the Fourth Amendment, stating, in its opinion, that "whether entrance to the home or office of a person suspected of crime be obtained by a representative of any branch or subdivision of the government of the United States by stealth, or through social acquaintance, or in the guise of a business call, and whether the owner be present or not when he enters, *any search and seizure subsequently and secretly made in his absence*, falls within the scope of the prohibition of the Fourth Amendment, \* \* \*." (Emphasis supplied.) In Wakkuri v. United States, 6 Cir., 67 F.2d 844, where government agents, after receiving a complaint that defendant was violating the Prohibition Act, and after smelling the odors of cooking mash emanating from his bathhouse, drove upon his premises, and while inside the curtilage, and without a warrant, knocked on the door of the bathhouse, which was opened by defendant, resulting in the finding of a still, the court held the search in violation of the Fourth Amendment.

However, we consider that the foregoing authorities do not govern the instant case. Here, it is true, the government agent was a trespasser in the sense that he drove into the driveway of appellee's premises. In like manner he would be a trespasser if he approached appellee's front door and stood on his porch, ringing the doorbell. Whatever his status, as he drove into the driveway and stood on appellee's premises, he secured no information upon which the warrant was based until he was told by Mrs. Bush, in replying to his request to buy liquor, that she would show him what she had, and "motioned" him into her kitchen. This appears clearly to have been an invitation by Mrs. Bush to come into the house.

As to misrepresentations made to Mrs. Bush, we are of the view that the only misrepresentation was that the agent hid his identity as an officer and posed as a member of the general public. Evidence obtained by law enforcement officers, using the subterfuge of hiding their identity in order to pose as members of the general public, has consistently been held to be admissible. United

States v. On Lee, 2 Cir., 193 F.2d 306; United States v. Smith, D.C.Tex., 43 F. 2d 173; Purifoy v. United States, 5 Cir., 170 F.2d 144. In the instant case, as in United States v. Smith, supra, and Purifoy v. United States, supra, the defendant invited the officer into the house and displayed the liquor. We cannot view the action of the government agent in this case as an unlawful trespass, securing entry by stealth, and resulting in an illegal search. In such important questions relating to the protection of a citizen against unreasonable searches and seizures, we give great heed to the views expressed in the opinion of the careful and experienced trial judge in this case, holding that the search violated constitutional guaranties. However, we are of the opinion that the warrant issued to search the Bush premises was lawful, and, accordingly, the judgment of the District Court is reversed and the case remanded for a new trial.

### On Petition for Rehearing.

In their petition for rehearing, appellees, among other matters, stress the claim of waiver by Reva Finchum Bush of her husband's constitutional rights in inviting the government officer into their dwelling house where the whiskey was first seen, and later seized. It appeared from the evidence that when the officer first went to appellees' home, no search or seizure was made. When the officer approached the house, Mr. Bush was standing in the yard. At that time, in answer to their questions, Mr. Bush told the officer and the two men who accompanied him that he did not handle liquor, and did not have any. When Mrs. Bush joined the group, her husband wandered off to the side, but remained within hearing distance while the men talked to Mrs. Bush. Later, she went into the kitchen, returned, further questioned the men as to the different people they knew, and finally stated that she would show them what she had, and invited the officer into the kitchen, the other men following. There she removed two half gallons of whiskey from a closet, placed them on the sink, and removed the tops. After she had let them sample the whiskey and had told them the price per case, she went outside and conferred with her husband while the others remained in the kitchen. The evidence used in obtaining the search warrant resulted from this visit of the officer to appellees' kitchen. No objection was made by Mr. Bush to the officer's entering the kitchen, or to his remaining there, while Mrs. Bush went outside to confer with him. From the record before us, there was no waiver by the wife of her husband's constitutional rights. The later search by virtue of the warrant was lawful.

Appellees' petition for rehearing is denied.