James WHITING, Defendant, Appellant,

v.

UNITED STATES of America, Appellee.

No. 6073.

United States Court of Appeals First Circuit.

Heard April 1, 1963.

Decided June 28, 1963.

Certiorari Denied Oct. 21, 1963.

See 84 S.Ct. 158.

Charles F. Choate, Boston, Mass., for appellant.

William J. Koen, Asst. U. S. Atty., with whom W. Arthur Garrity, Jr., U. S. Atty., was on brief, for appellee.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

ALDRICH, Circuit Judge.

The defendant was indicted in six counts for illicit transactions in narcotics on May 3, June 28 and July 10, 1959. At the trial he admitted making transfers of narcotics on these dates to one Peterson, a government agent, but defended on the grounds that he acted only as Peterson's agent rather than as a principal, and that, in the alternative, he had been entrapped. Following a jury trial he was convicted on all counts. We reversed for errors in relation to the entrapment defense, and ordered a new trial. Whiting v. United States, 1 Cir., 1961, 296 F.2d 512. At the second trial the defendant was acquitted on four counts, and found guilty with relation to the transaction on July 10. He again appeals.

The defendant argues that the evidence shows entrapment as matter of law.[1] In spite of the acquittals on the earlier transactions, in order fully to consider this contention we must go back to the beginning.

Taking the evidence most favorable to the government, the jury was warranted in finding that on May 3, 1959 Peterson sought and obtained entrance to the defendant's apartment in Springfield, Massachusetts, where he represented himself to be a tobacco worker from Connecticut acquainted with a Hartford woman known to the defendant's wife. After Peterson talked with the defendant and his wife about people and "various clubs" he allegedly frequented in Hartford, the defendant asked him whether there was "much stuff in Hartford." "Stuff" quite apparently meant narcotics, which had not been previously referred to. Peterson replied that there was some, and asked if there was "much stuff in Springfield." To this defendant answered in the affirmative, and asked Peterson if he was

a user. Peterson said that he was not, asked defendant if he was, and received an affirmative answer. Peterson then asked defendant if he had any narcotics for sale, to which defendant replied that he had none at present, but that he had a friend who had. Peterson requested an introduction. Defendant made an unsuccessful attempt to place a telephone call and he and Peterson then left the apartment. Subsequently they entered another building, where they had a discussion of price. Peterson gave the defendant $10 in advanced government funds. Defendant went upstairs and was heard to speak to a man called Jim. No introduction of Peterson took place. On defendant's return he gave Peterson two packets later found to contain heroin. He also gave him a slip of paper on which was written his telephone number in case Peterson wanted more "stuff."

Although he admitted this transfer of narcotics, and giving Peterson his telephone number, the defendant otherwise told a quite different story, particularly as to Peterson's persuasive efforts to induce him to act.[2] The jury, of course, did not have to accept defendant's account.

After the first visit Peterson returned several times to the defendant's apartment and sought to purchase more narcotics. On each occasion the defendant said he was not going to deal with him further until he had checked on him, and that he had not done so. On June 28 Peterson and a "special" Bureau employee who was an acquaintance of the defendant's met the defendant on the street. After a conversation they went to another building. Peterson gave the defendant $10 and after the defendant entered the building he returned and gave Peterson two small packets which later proved to contain heroin.

1. The agency defense, not presently in issue, related particularly to the first two transactions, as to which defendant has now been acquitted.

2. Essentially the "persuader" was the agent's allegedly "sick" (i. e., from withdrawal symptoms) girl friend. We will assume, without deciding, that this was such a high-powered story as to constitute improper inducement. Cf. Wall v. United States, 5 Cir., 1933, 65 F.2d 993.

On July 10 Peterson again visited the defendant's apartment. The defendant's wife asked him if she had not seen him riding with the Springfield police. Peterson denied the accusation and produced a driver's license and automobile registration with a ficticious name and address. The evidence would warrant a finding that the defendant or his wife did some checking with respect to the license. Thereafter the defendant said he would supply Peterson that night. Later, on the street, Peterson told the defendant he wanted the same amount as before. After the defendant absented himself for some time he returned and gave Peterson two packets in exchange for $10 then paid to him. These packets, also, proved to contain heroin. Finally, there was evidence of an admission by the defendant warranting a finding that he kept some of the money.

The government offered no evidence suggesting why Peterson initially selected the defendant as a likely, or even possible, participant in a narcotics transaction. At the first trial evidence admitted in this regard was hearsay of such a distant nature that it led to serious difficulties. This evidence was not reoffered. On this record we cannot assume that before he was approached the government had legally adequate evidence of defendant's predisposition. On the other hand, Peterson's knowledge of defendant's particular friends made it obvious, for what it is worth, that he was not simply making a blind spot-check of the neighborhood.

It being apparent that the government solicited the sales, the court charged the jury that the burden was upon the government to disprove entrapment beyond a reasonable doubt, and properly placed no initial burden upon the defendant. Cf. Gorin v. United States, 1 Cir., 1963, 313 F.2d 641, cert. den. 83 S.Ct. 1870. The defendant took no exceptions of any consequence to the charge.[3] His position is that he should have been acquitted.

Where there is government participation in criminal activity its extent obviously may vary from case to case from, for example, the mere purchase of obscene literature on regular sale[4] to a massive course of persuasion eventually corrupting a clearly reluctant victim. Before deciding whether undesirable, and hence "unlawful" entrapment must be found as matter of law in the present case we must consider briefly[5] the philosophy behind it. So far as the individual defendant is concerned the defense[6] has no logical core. The fact

3. Defendant did except to the court's failure to repeat its instructions as to the burden of proof when the jury returned and asked for repetition of the instructions defining entrapment. There is nothing in this. The court was not obliged to review other portions of the charge where nothing it said modified, or reflected in any way upon, such other instructions. It is elementary that a supplemental charge is to be read in connection with, and in context with, the original charge, unless there is a variance. Albizu v. United States, 1 Cir., 1937, 88 F.2d 138, cert. den. 301 U.S. 707, 57 S.Ct. 940, 81 L.Ed. 1361; Beckstead v. United States, 10 Cir., 1959, 272 F.2d 571; Sherman v. Metropolitan Transit Authority, 1963 Mass.A.S. 552, 189 N.E.2d 526.

4. A claim that such a purchase constitutes entrapment we rejected earlier this term without mention. Excellent Publications, Inc. v. United States, 1 Cir., 1962, 309 F.2d 362. See also United States v. Roth, 2 Cir., 1956, 237 F.2d 796, 800–801, aff'd, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498.

5. For a recent, more comprehensive, analysis, see Note, 73 Harv.L.Rev. 1333 (1960). See also Model Penal Code § 2.10, comments (Tent. Draft No. 9, 1959).

6. Entrapment is not a defense in the strict sense of the word. If the defendant shows, by a fair preponderance of the evidence, that his action was induced by a government representative, the burden is on the government to show that he was not impermissibly entrapped. Gorin v. United States, supra. We need not decide whether the government is obliged to meet the criminal standard, but possibly it is not since, as hereinafter pointed out, the issue is not directly related to criminality. See also 73 Harv.L.Rev. supra, n. 5, at 1345.

that a defendant's actions were induced by a government representative does not mean that he did not commit all of the elements of the offense. If the inducement had come from parties having no connection with the government it would absolve him in no degree. Polski v. United States, 8 Cir., 1929, 33 F.2d 686, cert. den., 280 U.S. 591, 50 S.Ct. 39, 74 L.Ed. 640. Yet there is a natural feeling, expressed by different courts in different ways, that it is not the duty of the police to corrupt citizens. At the same time it is not denied that certain crimes, of which the narcotics traffic furnishes a prime example, are committed in secret under such circumstances that perpetrators might never be discovered if government representatives were not permitted to participate to some extent. Judges may disagree as to how much participation is, as matter of law, too much, depending primarily upon the emphasis they attach to preventing "dirty business," or "unfairness" to the defendant, as against permitting vigorous law enforcement. Nonetheless we believe that there is not such a wide divergence of views as a cursory study of the various opinions resulting from the indictments of Sorrells and Sherman [7] might indicate. We suggest, what we take to be in accord with Accardi v. United States, 5 Cir., 1958, 257 F.2d 168, cert. den. 358 U.S. 883, 79 S.Ct. 124, 3 L.Ed.2d 112, that once government inducement has been shown there are two issues. The government should establish that it engaged in no conduct that was shocking or offensive per se,[8] and that the defend-

ant was not, in fact, corrupted by the inducement.[9]

So far as the second aspect is concerned, it could not possibly be ruled that the present defendant must prevail. Although it may be inferred that he concluded so to do because of Peterson's references to "clubs" or to mutual acquaintances, the defendant was the first to mention the subject of narcotics. He was also the first to raise the question of personal use. His remarks were scarcely oblique. When Peterson, a person whose only credentials were the alleged mutual acquaintances, disclosed an interest in making a purchase, it could hardly be said that the defendant's immediate response was indicative of a weak will converted by government temptation. At best, this was a question of fact for the jury.

Turning to the other issue, appellant urges that it is per se improper conduct to offer inducement, as on the present record was done here, without prior good reason to suspect guilt. See Heath v. United States, 10 Cir., 1948, 169 F.2d 1007, 1010. We do not agree. Solicitation to commit a crime does not of itself involve constitutional rights, and is not comparable to the arrest of person or to the invasion of premises. Furthermore, if the existence of probable cause, normally shown by hearsay evidence, is to determine who may and who may not be solicited, a defendant's exposure to temptation may depend upon circumstances over which he has no control, and for which he was in no way responsible.[10]

7. Sherman v. United States, 1958, 356 U.S. 369, 378, 78 S.Ct. 819, 2 L.Ed.2d 848, reversing 2 Cir., 1957, 240 F.2d 949; Sorrells v. United States, 1932, 287 U.S. 435, 453, 53 S.Ct. 210, 77 L.Ed. 413, reversing 4 Cir., 1932, 57 F.2d 973, 978.

8. Conceivably this divisible question should be for the court. Cf. Sherman v. United States, supra, at 384–385, 78 S.Ct. 819, (concurring opinion).

9. This is not to say that the defense of entrapment might not itself be subject to some limitations, cf. Model Penal Code §

210(3), comment 7, at 23 (Tent. Draft No. 9, 1959), a question not here presented.

10. Fairly remote hearsay may be introduced on the issue of probable cause. See Jones v. United States, 1960, 362 U.S. 257, 267–272, 80 S.Ct. 725, 4 L.Ed.2d 697; Draper v. United States, 1959, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327; United States v. Eisner, 6 Cir., 1962, 297 F.2d 595, cert. den. 369 U.S. 859, 82 S.Ct. 947, 8 L.Ed.2d 17. Thomas v. United States, 8 Cir., 1960, 281 F.2d 132, cert. den. 364 U.S. 904, 81 S.Ct. 239, 5

(Conversely, it may mean that persons importuned in good faith, as by mistake or accident, may plead entrapment although the evidence establishes that they were ready, able and highly willing.) Moreover, while evidence of probable cause is of the same general nature as that which would be admissible on the second issue, namely, to show the defendant of such predisposition that he was not in fact corrupted, it need not be so substantial in character.[11] Hence its admission might well affect the jury, to the defendant's prejudice, on this more important issue. In the light of these factors, and our belief that a defendant should not be convicted in any event where the government fails to show at the trial that he was not corrupted by the inducement, we hold that it is not per se offensive conduct for the government to initiate inducement without a showing of probable cause.[12] Silva v. United States, 9 Cir., 1954, 212 F.2d 422, 424; United States v. Abdallah, 2 Cir., 1945, 149 F.2d 219, 222 n. 1, cert. den. 326 U.S. 724, 66 S.Ct. 29, 90 L.Ed. 429; Newman v. United States, 4 Cir., 1924, 299 F. 128, 132.

Defendant's second contention is that his constitutional rights were infringed by Peterson's gaining entry to his home by false representations, as a result of which any inducement was per se wrongful; or, alternatively, that the government's evidence was illegally obtained and should be barred on that account. Defendant asserted none of this below, but feels that we should consider it under the "plain error" rule. Lash v. United States, 1 Cir., 1955, 221 F.2d 237, 240, cert. den. 350 U.S. 826, 76 S.

Ct. 55, 100 L.Ed. 738; Malatkofski v. United States, 1 Cir., 1950, 179 F.2d 905, 917; Fed.R.Crim.P. 52(b). We regard the error, if there were such, as anything but plain. Indeed, because of defendant's prior failure to raise the issue, the record fails to disclose whether the misrepresentations occurred before Peterson entered the apartment, or afterwards. However, because the question is of current importance we will deal with it briefly, and on the assumptions, in favor of the defendant, that Peterson before entering misrepresented his name, his occupation and his friends.

It is to be noted at the outset that the government did not, by these misrepresentations, gain access, either directly or indirectly, to any tangible evidence, or even to intangible information. Nor did the substantive events which thereafter took place occur in the defendant's premises. All that Peterson could be said to have "gained" was an opportunity to make defendant's acquaintance and, by what we have already held to be permissible means, to cause defendant to believe that he was a reliable customer. The fact that he initiated this stratagem in the defendant's home, rather than at some other place or time, was of no ultimate relevance or consequence.

If the type of identity misrepresentation made in this case is to be outlawed generally the whole structure of law enforcement involving government decoys must collapse. Even if such misrepresentation merely becomes unlawful if it takes place in connection with an entry into a defendant's premises, the result would be almost as serious. All sales to possible decoys could be insulated by be-

---

L.Ed.2d 196. But cf. Wong Sun v. United States, 1963, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441.

11. See fn. 10, supra. All that we decided on the prior appeal, 296 F.2d 512, was that distant hearsay was inadmissible on the substantive issue of predisposition as distinguished from "good cause."

12. It is not necessary to define in other respects what is offensive per se. See Donnelly, Judicial Control of Informants, Spies, Stool Pigeons, and Agent Provo-

cateurs, 60 Yale L.J. 1091, 1114-15 (1951); see also Section 2.13(1) (b) of the Model Penal Code, (Proposed Official Draft 1962). Our objection to the Model Penal Code is that it seems to be concerned solely with this question, to the exclusion of the issue of whether, subjectively, cf. Lopez v. United States, 1963, 83 S.Ct. 1381, the defendant was in fact corrupted. In this we believe it too harsh upon the police in certain instances, and too harsh upon the defendant in others.

ing made in the seller's private domain, for beyond peradventure no sale would be made to an agent who did not misrepresent his true identity or purpose. We cannot accept such a view. United States v. Bush, 6 Cir., 1960, 283 F.2d 51, cert. den. 364 U.S. 942, 81 S.Ct. 461, 5 L.Ed. 2d 373; Warren v. Territory of Hawaii, 9 Cir., 1941, 119 F.2d 936. But cf. Fraternal Order of Eagles, No. 778 v. United States, 3 Cir., 1932, 57 F.2d 93. In Lopez v. United States, 1963, 83 S.Ct. 1381, the court sustained a conviction for attempted bribery of a federal agent which took place on the defendant's premises to which the agent had obtained admission by misrepresentation, viz., that he was a dishonest agent. The case at bar, in which nothing of final significance took place in defendant's apartment, is an even clearer case for the government.

Judgment will be entered affirming the judgment of the District Court.