**UNITED STATES of America**
v.
**Anne Russelle HORTON, also known as Toni Manning; Ronald Charles Edgar.**
**Ronald Charles Edgar, Appellant.**
**No. 14447.**

United States Court of Appeals Third Circuit.

Argued Dec. 10, 1963.

Decided Feb. 20, 1964.

See also D.C., 202 F.Supp. 681.

Jacob J. Kilimnik, Philadelphia, Pa., for appellant.

Thomas F. Gilson, Asst. U. S. Atty., Philadelphia, Pa. (Drew J. T. O'Keefe, U. S. Atty., Philadelphia, Pa., on the brief), for appellee.

Before BIGGS, Chief Judge, and McLAUGHLIN and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

The appellant Edgar has been convicted and has received separate sentences upon two counts of an indictment. The first count charged him and Anne Horton with conspiring to violate the requirement of section 2424 of Title 18, U. S. Code, that a person who harbors an alien woman for the purpose of prostitution shall file with the Commissioner of Immigration a statement showing the circumstances of the alien's entry into the country and the place where she is kept. The other count charged the substantive offense of unlawfully transporting a girl less than 18 years old from New Jersey to Pennsylvania for the purpose of prostitution in violation of section 2423 of Title 18.

The case was tried to a jury. Edgar moved for acquittal on the conspiracy count at the conclusion of the evidence for the prosecution and again when he rested his own case without submitting any additional evidence. The denial of these motions is challenged on this appeal.

In determining the sufficiency of the evidence to go to the jury it must be kept in mind that the only conspiracy charged was a scheme to avoid or withhold the registration of an alien prostitute as required by section 2424. That section does not prohibit indulgence or commercial involvement in prostitution. It merely imposes a requirement of reg-

istration upon one who harbors an alien prostitute. Thus, the government had to associate the appellant with a scheme to avoid or withhold such registration.

There is no evidence that Edgar harbored the prostitute, Carmen Duckett. Indeed, the government conceded at the argument of this appeal that the evidence did not establish a situation in which Edgar was obligated to register the prostitute. Anne Horton alone was shown to be the harborer, required as such to file a statement with the Commissioner of Immigration. Therefore, it was necessary in some way to associate Edgar with an undertaking to accomplish or facilitate Horton's avoidance of the obligation which section 2424 imposed upon her. But the only thing proved was Edgar's involvement in the commercial debauchment of the alien girl. It was not shown that Edgar did anything to encourage Horton to withhold registration or to conceal that omission. It does not appear that he was even aware that Horton had not filed a statement or that she was obligated to do so. The significance of this failure of proof may be made clearer by an illustration given by Judge Learned Hand many years ago:

> "While one may, for instance, be guilty of running past a traffic light of whose existence one is ignorant, one cannot be guilty of conspiring to run past such a light, for one cannot agree to run past a light unless one supposes that there is a light to run past." United States v. Crimmins, 2d Cir. 1941, 123 F.2d 271, 273.

Since there was no evidence of Edgar's association with a purpose to further or accomplish the definitive objective of the alleged conspiracy, his motion for acquittal on that count should have been granted, and such acquittal must now be ordered. Cf. United States v. Rappaport, 3d Cir. 1961, 292 F.2d 261.

In support of the substantive count, charging interstate transportation of a juvenile prostitute, there was ample evidence that Edgar induced Carmen Duckett to travel from New Jersey to Philadelphia for purposes of prostitution. However, on this appeal it is urged that the trial court committed reversible error in various trial rulings. The only contention which requires discussion is that all of Carmen Duckett's testimony and the testimony of certain police officers should have been excluded because this testimony was the product of an unreasonable search of Anne Horton's apartment.

The "search" which appellant attacks was made by two local police officers in plain clothes. The evidence shows that police officers, acting upon a tip from an undisclosed source concerning the use of the Horton apartment for prostitution, had maintained a watch outside of the building for several hours daily over a period of five days. The apartment in question was on the second floor of a building containing at least three other apartments. About noon on the day in question the two officers observed Jerome Weiss emerging from the building. Why they believed that he was coming from the Horton apartment does not appear. In any event, they questioned him and he told them that he had gone to the apartment merely to pick up a suit. They then proposed that he go back to the apartment with them to verify his story. There is no evidence that he expressed any objection to this. When the three men arrived at the apartment door, Weiss knocked, identified himself to Anne Horton through the door and requested admission. When she opened the door the three men stepped inside and the officers immediately identified themselves as policemen.

Apparently the door opened directly into a room where the other occupants of the apartment were assembled. Carmen Duckett was there, dressed only in transparent panties and a transparent brassiere. A second woman was dressed only in a transparent negligee. Edgar also was present. The officers' testimony to which objection was made was a description of the scene thus observed as they entered the apartment. In addition, this discovery of Carmen Duckett

led to her subsequent admissions that she was a prostitute and that Edgar had induced her to engage in prostitution and to travel from New Jersey to Philadelphia for that purpose. Therefore, objection was made to all of her testimony.

The appellant contends that the police officers' observation of two undressed women, one of them the alien involved in this case, in the Horton apartment occurred during and as a result of an unreasonable search. Search necessarily involves a seeking out. An unreasonable search of a residence occurs when an unwarranted intrusion upon privacy is employed in seeking out something therein. Unwarranted intrusion may occur in the obtaining of entry, or in conduct after entry, or in both.

█ In this case, the not very detailed testimony concerning the events in question indicated that Weiss and the accompanying police officers were admitted from a public hallway through a door opening into the room where the occupants, including two all but naked women, were present. Once the door was opened and the officers stepped inside, the scene which they later described, over objection that they were making an illegal search, was immediately before them. In these circumstances, the illegality in the conduct of the officers must be found solely in the manner of gaining admittance. For if their presence was lawful, the observation of what was then and there immediately apparent could not in itself be a wrong. Ellison v. United States, 1953, 93 U.S.App.D.C. 1, 206 F.2d 476; Paper v. United States, 4th Cir. 1931, 53 F.2d 184; Gizzo v. State, 1954, 160 Tex. Cr.R. 593, 272 S.W.2d 898; State v. Magnano, 1922, 97 Conn. 543, 117 A. 550.

The evidence shows without contradiction that the police officers came to the Horton apartment to make inquiry. There is no evidence that their purpose was to search the premises and they did not do so. Although they suspected that this was a brothel, their visit at the time in question was occasioned by Weiss' dubious account of what he had been doing there, and their immediate purpose was to verify or discredit his story. For this reason the many cases which turn upon some question as to the propriety of searching a house without a warrant are not helpful here. The visit of the officers was attended by no purpose which required a warrant.

█ But even though a search was not intended, the method of obtaining entry is challenged as improper. True, only Weiss identified himself in asking Horton to open the door. He did not volunteer the additional information that police officers accompanied him. But the police were with him on a mission directly concerning Weiss and his recent visit to the apartment, and they identified themselves as soon as the door was opened. In these circumstances, we think the policemen standing inside the door and observing the persons within plain view inside were not trespassers. Cf. Ellison v. United States, supra. The legitimacy of the police mission to verify Weiss' account of the visit he had just made to the apartment justified the use of Weiss, the individual primarily interested and involved, to induce Horton to open the door. In all the circumstances, the conduct of the police did not fall within that area of official overreaching or "dirty business" which is the concern of courts when they exclude evidence obtained by unwarranted intrusion upon the privacy of a residence. Cf. On Lee v. United States, 1952, 343 U.S. 747, 72 S.Ct. 967, 96 L.Ed. 1270 (sanctioning a much more objectionable stratagem of introducing a concealed microphone into a house upon the person of a visitor for electronic eavesdropping); Leahy v. United States, 9th Cir. 1959, 272 F.2d 487 (officers gaining admittance by pretending to be tax assessors); Jones v. United States, 1962, 113 U.S.App.D.C. 14, 304 F.2d 381 (officers using janitor as a front to gain admittance).

It is also relevant that all of these events occurred a few minutes before noon, at a normal time for a business visitor to request admittance to a residence. It has become part of the accepted routine of the urban householder's

life that his or her domestic activities are frequently interrupted by business callers, some less welcome than others. Charitable solicitors, salesmen, poll or census takers, process servers, policemen and public inspectors of various kinds, arrive without notice to inquire, solicit, deliver or investigate as the case may be. If such calls at times become annoying, they do not on that account involve illegal entry. The householder may refuse admittance, but if he opens the door the visitor who is permitted to cross the threshold upon a lawful mission is in no sense a trespasser or wrongdoer, particularly when he properly identifies himself as he enters and does not push on beyond the entrance area where strangers on legitimate business missions are normally received.

■ Courts have been properly critical of the police officer who, once the outer door is opened, presses on into a residence to search for something, even though the householder who has opened the door to him does not overtly protest. Johnson v. United States, 1948, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436; Williams v. United States, D.C.Cir. 1959, 263 F.2d 487; Honig v. United States, 8th Cir. 1953, 208 F.2d 916. Such intrusion is normally objectionable and the householder's failure to protest is likely to impart submission to authority rather than consent. Moreover, as a matter of public policy, officers are and should be discouraged from searching premises without a warrant. There is no similar policy against official visitation for purposes of inquiry not attended by search. Therefore, we think a different view is proper when the business visitor, whether policeman or private person, merely steps within the door that has been opened to state whatever his lawful business may require. The householder often says in retrospect: "If I had known who was at the door and what he wanted I would not have let him in". But this attitude after the event does not make the permitted presence of the visitor within the entrance area where business conversations are normally conducted an unlawful intrusion.

We see no reason to discourage policemen from obtaining access, without trespass, to this entrance area to make proper inquiries, whether concerning suspected wrongdoing or for other official business. Such discouragement would be the only purpose served by excluding from evidence in subsequent litigation testimony based upon the observation of that which was in plain view, once the outer door of a residence was opened to the visitor.

Other points have been argued by the appellant, but none of them discloses reversible error.

Edgar's conviction on the conspiracy count will be reversed. His conviction and sentence for violation of section 2423 will be affirmed.