UNITED STATES of America, Plaintiff,

v.

James H. LOCKLEAR, Defendant.

Crim. No. 39893.

United States District Court
N. D. California, S. D.

Jan. 29, 1965.

Terry J. Hatter, Jr., Asst. U. S. Atty., San Francisco, Cal., for plaintiff.

Dean L. Bender, San Francisco, Cal., for defendant.

OLIVER J. CARTER, District Judge.

Defendant has made a motion to suppress certain evidence, to wit, six United States Treasury notes, which he claims came into the possession of the United State through an illegal search by two agents of the Federal Bureau of Investigation. The evidence adduced at the hearing was to the effect that through an informer the F.B.I. had learned that someone at 3639 B Folsom Street in San Francisco was trying to dispose of treasury notes to the San Francisco underworld. The informer had further stated that the seller of the notes had arranged to sell them on the morning of September 29, 1964, at the above mentioned address to a Mr. Armstrong, a man allegedly in the financial business. On the morning of the prescribed day two federal agents, Deardorff and Galloway arrived at the Folsom Street address armed with a fictitious business card in the name of J. A. Armstrong. The agents knocked on the door. It was opened by Locklear's wife. Deardorff identified himself as Armstrong and the agents were taken to the defendant in the next room. They asked the defendant if he had anything for them. He replied that he did not. Agent Galloway then produced a treasury note and asked the defendant if he had any similar notes. The defendant left the room and returned with the six notes now in question. He gave the notes to the agents to inspect saying that he took the notes from the bank. They immediately checked the serial numbers against a list of notes which had been reported as either stolen or lost by a local bank and found that these were the missing notes. The agents then arrested defendant for possession of stolen bank property 18 U.S.C. § 2113(c), and advised him of his constitutional rights.

The defendant contends that the entry into his home by subterfuge was an illegal entry which then made the subsequent search illegal, even though the agents may have had probable cause for the search. He argues that the agents in order to make a valid search of defendant's residence had to get a search warrant, or had to have made the search pursuant to a valid arrest. In either case they would then have had to announce their purpose and authority before entry. As authority for this position defendant cites Jones v. United States, 357 U.S. 493, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1957); Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1947); Gouled v. United States, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647 (1920); and Fraternal Order of Eagles Lodge No. 778 v. United States, 57 F.2d 93 (3rd Cir. 1932).

In the Gouled case, supra, a federal agent gained access to the defendant's premises through feigned friendship for the purpose of searching through defendant's files to find evidence of fraud on the part of defendant in the sale of uniforms to the army. The court held that entry by means of a ruse for the purpose of search was a violation of the defendant's constitutional guaranties against illegal search. But in that case the government conceded that the agent went onto the premises for search, and directed its main argument to the fact that prior to this case only searches conducted by means of actual force or under color of legal authority had been proscribed.

In the Eagles case, supra, federal agents secured access to the defendant's premises by means of forged membership cards. Again the court found that the purpose of the entry was to conduct a search for evidence. The court held that a subsequent search warrant procured on the basis of the sworn affidavits of the officers as to the conditions they had observed on their prior visit was invalid, and the search conducted pursuant to the warrant was held to be an illegal search. But again it was the finding of the court that the first entry was made for purposes of search.

In the Johnson case, supra, federal agents smelled opium coming from the defendant's apartment. They announced their identity and the door was opened. They then saw the defendant and after determining that she was the sole occupant of the premises they said "[C]onsider yourself under arrest because we are going to search the room." The search turned up opium and an opium smoking apparatus. The court held that the entry, search, seizure and arrest were illegal. The court found that the search could only be legal if the arrest was legal, but the arrest depended upon the fact that defendant was the sole occupant which fact was only learned through the entry gained under color of legal authority. The court felt that since there was no threat that evidence

would be destroyed, and since the agents were possessed with sufficient information to secure a search warrant they should have waited until one was secured before entry.

In the Jones case federal agents had secured a daytime warrant for search. They did not execute it immediately but surveyed defendant's home and waited for more evidence. About nine p. m. after dark they saw a truck disappear behind the house. Later it returned toward the road but got stuck in defendant's driveway. Agents searched the truck, found illegal alcohol, and arrested the driver and attendant. They then went to the house for the purpose of searching it for evidence of an illegal still. They were barred at the door by defendant's wife. They identified themselves as federal officers and demanded admission. The wife asked to see their warrant. They replied that they did not need one and entered the premises. The court found that the only reason for entry was the belief that evidence of illegal activity would be found. This was held not to be sufficient to justify entry without warrant. The court emphasized that this night time raid on the home of defendant was the very type of activity which the Fourth Amendment sought to avoid.

But in the case at bar the entry was not made under color of legal authority as in Johnson and Jones, supra. The agent here did not have "probable cause" on which a search warrant could be secured as in Johnson and Jones, supra. The entry here was made in the daytime and not in the night time as in Jones, supra. But most importantly the agents here did not enter the premises for purposes of arrest or search as was found to be the case in all of the above cases. As a result the rules set out in those cases have no application to the situation involved in the instant case. In the case at bar the agents did not know whom they would find on the premises or whether there were any notes on the premises. The information in their possession, however, was sufficient to merit further in-

quiry, and this is what they set about to do.

■ Certain types of inquiry, surveillance and observance while they might invade personal privacy, have long been held not to violate the constitutional protection against illegal searches and seizures. Thus in United States v. Bush, 283 F.2d 51 (6th Cir. 1960), cert. denied 364 U.S. 942, 81 S.Ct. 461, 5 L.Ed.2d 373, a federal agent posing as a tourist seeking to buy liquor was invited into defendant's home and was shown sample jars of non-tax paid whiskey. The agent used the information thus gained as a basis for securing a search warrant pursuant to which nine and a half gallons of non-tax paid whiskey were seized in the home of defendant. Defendant moved to suppress the evidence thus seized on the grounds that the entry by misrepresentation was illegal and knowledge gained through such entry could not be used as the basis for the issuance of a search warrant. That defendant, too, cited Gouled and Eagles, supra. The District Court granted the motion but on appeal the Circuit Court reversed. It distinguished Gouled and Eagles, supra, as cases involving entry for the actual purpose of search and inapplicable to the situation here. The court said:

"As to the misrepresentations made to Mrs. Bush, we are of the view that the only misrepresentation was that the agent hid his identity as an officer and posed as a member of the general public. Evidence obtained by law enforcement officers, using the subterfuge of hiding their identity in order to pose as members of the general public, has consistently been held to be admissible. United States v. On Lee, 2 Cir., 193 F.2d 306; United States v. Smith, D.C. Tex., 43 F.2d 173; Purifoy v. United States, 5 Cir., 170 F.2d 144. In the instant case, as in United States v. Smith, supra, and Purifoy v. United States, supra, the defendant invited the officer into the house and displayed the liquor. We cannot view the action of the government agent in this case as an unlawful trespass, securing entry by stealth, and resulting in an illegal search." (283 F.2d at 53, 54)

Similarly in United States v. Denton, 307 F.2d 336 (6th Cir. 1962) cert. denied 371 U.S. 923, 83 S.Ct. 292, 9 L.Ed.2d 232, an informer and a government agent entered defendant's premises and purchased illegal alcohol by persuading defendant that they, too, were engaged in traffic in illegal alcohol. The court stated:

"* * * It is urged among other things that the evidence aforesaid was obtained as results of illegal exploratory searches and seizures and should have been suppressed by the trial judge as to all defendants. The trial judge found no merit in this contention and with this conclusion we agree, since upon the evidence adduced, there was no search or seizure of any kind of the Denton premises involved. United States v. Bush, 283 F.2d 51 (C.A.6) 1960." (307 F.2d at 338)

In Whiting v. United States, 321 F.2d 72 (1st Cir. 1963) cert. denied 375 U.S. 884, 84 S.Ct. 158, 11 L.Ed.2d 114, the court discussing this same type problem said:

"If the type of identity misrepresentation made in this case is to be outlawed generally the whole structure of law enforcement involving government decoys must collapse. Even if such misrepresentation merely becomes unlawful if it takes place in connection with an entry into a defendant's premises, the result would be almost as serious. All sales to possible decoys could be insulated by being made on the seller's private domain, for beyond preadventure no sale would be made to an agent who did not misrepresent his true identity or purpose. We cannot accept such a view." (321 F.2d at 77, 78).

In Warren v. Territory of Hawaii, 119 F.2d 936 (9th Cir. 1941) entry into a brothel by an agent posing as a customer and his subsequent solicitation by and payment of money to an inmate of the

brothel was held not to be an unreasonable search. Likewise in United States v. Horton, 328 F.2d 132 (3rd Cir. 1964) cert. denied, Edgar v. United States, 377 U.S. 970, 84 S.Ct. 1651, 12 L.Ed.2d 739, local police on a tip that a certain apartment was being used for prostitution placed the building under surveillance. They observed a man named Weiss leave the building. They questioned him as to what he had been doing in the building. He replied he went to pick up a suit. The officers took Weiss into the building to check his story. They asked Weiss to knock on the door and ask admission. The door was opened and all three stepped inside without invitation. The officers announced their identity. At trial defendant sought to suppress testimony as to what the officers had seen upon entry as illegally seized evidence. The District Court held there was no illegal seizure. In affirming the Circuit Court held:

"The evidence shows without contradiction that the police officers came to the Horton apartment to make inquiry. There is no evidence that their purpose was to search the premises and they did not do so. Although they suspected that this was a brothel, their visit at the time in question was occasioned by Weiss' dubious account of what he had been doing there, and their immediate purpose was to verify or discredit his story. For this reason the many cases which turn upon some question as to the propriety of searching the house without a warrant are not helpful here. The visit of the officers was attended by no purpose which required a warrant." (328 F. 2d at 135)

" * * * Moreover, as a matter of public policy, officers are and should be discouraged from searching premises without a warrant. There is no similar policy against official visitation for the purpose of inquiry not attended by search. * * * " (328 F.2d at 136)

In On Lee v. United States, 343 U.S. 747, 72 S.Ct. 967, 96 L.Ed. 1270 (1952), the court held that the securing of statements from defendant by means of an informer equipped with a concealed microphone was not a violation of defendant's constitutional guaranties against illegal search. The court further said:

"The use of informers, accessories, accomplices, false friends, or any of the other betrayals which are 'dirty business' may raise serious questions of credibility. To the extent that they do, a defendant is entitled to broad latitude to probe credibility by cross-examination and to have the issues submitted to the jury with careful instructions. * * * We think the administration of justice is better served if stratagems such as we have here are regarded as raising, not questions of law, but issues of credibility. We cannot say that testimony such as this shall, as a matter of law, be refused all hearing." (343 U.S. at 757, 72 S.Ct. at 973)

For further cases approving the use of ruses to secure entry see Dickey v. United States, 332 F.2d 773 (9th Cir. 1964); Davis v. United States, 327 F.2d 301 (9th Cir. 1964); and Leahy v. United States, 272 F.2d 487 (9th Cir. 1960).

In the case at bar the government agents went to defendant's home to make further inquiry concerning the tip that was given them. They planned to gain this information by posing as men who would purchase "hot" property from members of the underworld. They planned to give whomever they found at the address the opportunity to commit the crime of possession of illegal notes in their presence. Defendant cannot complaint now that because of his pre-determined intent to sell these notes he was tricked into availing himself of the opportunity for sale, at the wrong time and to the wrong people. "It is well settled that the fact that officers or employees of the government merely afford opportunities or facilities for the commission

of the offense does not defeat the prosecution. Artifice and stratagem may be employed to catch those engaged in criminal enterprises." Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L. Ed. 413 (1932). In fact there was no search. The defendant, although misinformed, voluntarily delivered the notes to the agents. The entry was legal. Defendant committed a felony in their presence, possession of stolen notes (18 U.S.C. § 2113(c). He was properly arrested for this crime by the agents. The notes were properly seized pursuant to a valid arrest.

It is Ordered that defendant's motion to suppress illegal evidence be, and the same is hereby denied.