**Edmond WAKER, Defendant, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 6584.**

United States Court of Appeals
First Circuit.

Nov. 12, 1965.

Robert E. Fast, Boston, Mass., for appellant.

William J. Koen, Asst. U. S. Atty., with whom W. Arthur Garrity, Jr., U. S. Atty., was on brief, for appellee.

Before ALDRICH, Chief Judge, HAMLIN, Senior Circuit Judge,* and McENTEE, Circuit Judge.

HAMLIN, Senior Circuit Judge.

Edmond Waker, appellant herein, was indicted in the United States District Court for the District of Massachusetts on March 12, 1964, on a charge of trans-

---

* Sitting by designation.

ferring marihuana in violation of 26 U.S.C. § 4742(a).[1] After being convicted on a jury trial he appealed to this court, which reversed and remanded. Waker v. United States, 1 Cir., 344 F.2d 795. Upon a second jury trial appellant was again convicted. Upon each trial appellant urged the defense of entrapment. A brief summary of the facts surrounding the transfer of the marihuana appears in footnote 4,[2] Waker v. United States, supra at 797. Concerning the defense of entrapment, this court in Waker v. United States, supra at 796, stated:

"The defense, essentially, was entrapment. It is clear, on the government's own case, that a transfer was requested by a government agent. It is also clear, just as in Whiting v. United States, 1 Cir., 1963, 321 F.2d 72, that while the agent apparently had some private reason for suspecting that the defendant would be amenable, on the evidence presented in court he had no probable cause. We reaffirm our holding in Whiting that where the inducement exercised was not 'shocking or offensive per se' the only issue is whether the defendant was sufficiently predisposed, so that while the particular offense was brought about by the government agent, the defendant's criminality, or 'corruption,' was not. On this issue, once inducement has been shown, the burden is on the government beyond a reasonable doubt." (Footnotes omitted.)

On the first trial the court reversed appellant's conviction because of the instructions given to the jury by the district court. We there said (344 F.2d at 797):

"Although the instant defendant had to be 'played with' a bit, the jury was warranted in concluding, to continue in the vernacular, that he was willing to take the bait. We see no purpose in detailing the evidence in the body of this opinion. The difficulty comes with the charge. The court did not separate out the issue of probable cause, as it might appear to the agent, to solicit the defendant, and defendant's actual predisposition to engage in illicit activities, i. e., whether he was in fact entrapped. It charged the jury that the prosecution could establish the defendant's predisposition by showing that the agent knew that he was predisposed to commit the crime, either from 'personal knowledge, or from information from an established authority that is to be believed.' This was either a total failure to charge on the more basic issue of predisposition as distinguished from probable cause, or a charge that on this basic issue hearsay could be considered. In either event it was directly

1. 26 U.S.C. § 4742. Order forms

(a) General requirement.—It shall be unlawful for any person, whether or not required to pay a special tax and register under sections 4751 to 4753, inclusive, to transfer marihuana, except in pursuance of a written order of the person to whom such marihuana is transferred, on a form to be issued in blank for that purpose by the Secretary or his delegate.

2. "The facts in this case were somewhat unusual. Briefly, the defendant, on being introduced to the government agent by an acquaintance, was asked by the agent whether he knew 'Reb.' An affirmative answer quickly led to a request by the agent and the furnishing of a packet in exchange for $30. The defendant also gave the agent his telephone number. The packet proved to be 'turkey,' or non-narcotic. The agent telephoned the defendant and urged him, at first unsuccessfully, to rectify the error. Later the defendant apologized and said that he would do so. However, at the appointed time, defendant transferred another 'turkey' in exchange for another $10. Then, possibly to assure the agent of his good faith, or to placate a guilty conscience, defendant offered to share the smoking of a 'reefer.' The agent took it; it proved to be genuine marihuana, and its transfer alone formed the basis of the present indictment. While these facts were perhaps unusual there was no unusual pressure placed upon the defendant to make the transfer."

contrary to Whiting v. United States, 1st Cir., 1961, 296 F.2d 512, 517–519. The defendant duly saved his rights. On this essential matter we have no alternative but to reverse."

On the second trial the government produced the witness Francis Martinus who testified not only to the occurrences on October 21, 1963, when he introduced government agent Cass to appellant and when appellant agreed to sell the contraband material to Cass, but also as to an occurrence in the latter part of September of the same year when he, Martinus, first met appellant. As to that occasion Martinus testified that he went to the Savoy Lounge with a Coast Guardsman named Richard Oakley (known as Reb). Martinus and Reb there met appellant and Reb and appellant talked about the sale of "stuff" [3] by appellant to Reb upon a prior occasion. Reb complained to appellant that the last "stuff" that he bought from appellant was "no good." Appellant replied that he had been doing business with him (Reb) for a long time, that he wanted to stay in his good graces and that he would make it good. Later, in the same conversation, Martinus saw appellant take material from an envelope, roll a cigarette with it, hand it to Reb, and heard appellant say, "Are you satisfied with this?" Appellant then handed the envelope to Reb and Reb gave appellant in exchange $20.

Martinus further testified that later in the presence of his superior he met agent Cass and was asked questions and gave answers concerning the activities at the Savoy Lounge which have been above set out. As a result of that conversation Martinus and Cass went to the Savoy Lounge on October 21 and met appellant. Martinus introduced Cass to appellant and appellant and Cass then made arrangements for Cass to purchase marihuana from appellant at the price of $30 per ounce or $175 for a pound.

■ Appellant contends that on the second trial the district court in its instructions "repeated the prejudicial error which caused this court to reverse the judgment entered following the first trial."

We disagree.

We have examined the instructions given by the district court upon the second trial. While it may be said that these instructions are not a model to follow implicitly, we do hold that they sufficiently advised the jury of the law applicable where the defense of entrapment is raised and of the requirement of the prosecution to prove the predisposition of the appellant to criminality under the circumstances described by the witnesses in this case.

■ Appellant also contends that the district court erred in refusing certain instructions offered by him. These instructions were mainly based on the theory that under the circumstances of this case the government was required to prove "beyond a reasonable doubt that the defendant was engaged in an established pattern of continuing criminal conduct consisting of the transfer of marihuana." These instructions were improper under our holding in Waker v. United States, supra, where we said at 344 F.2d page 796, "Defendant's concept that 'an established pattern of continuing criminal conduct' must be found is erroneous."

■ The appellant also contends that "the trial court erred in its charge on the definition of marihuana and in limiting appellant's cross-examination of the government expert on the composition of the substance alleged to be marihuana." We have examined the record and find that appellant was not improperly limited in his cross-examination of the government chemist and that the court properly paraphrased the language of the statute in its instructions to the jury defining marihuana.

An examination of the record of this case convinces us that the appellant was fairly tried and justly convicted.

Affirmed.

---

3. Narcotics.