**UNITED STATES of America, Appellee,**

v.

**Jeffrey Clinton RAINES, Appellant.**

**No. 75–1821.**

United States Court of Appeals, Eighth Circuit.

Submitted April 14, 1976.

Decided June 16, 1976.

---

8. *United States v. Giblin,* 523 F.2d 42, 44 (8th Cir. 1975); *United States v. Swanson,* 509 F.2d 1205, 1210 (8th Cir. 1975).

Curtis H. Foster, Minneapolis, Minn., for appellant; Sherman Bergstein, Minneapolis, Minn., on brief.

Richard E. Vosepka, Asst. U. S. Atty., Minneapolis, Minn., for appellee; Robert G. Renner, U. S. Atty., Minneapolis, Minn., on brief.

Before GIBSON, Chief Judge, HENLEY, Circuit Judge, and MEREDITH, Chief District Judge.*

GIBSON, Chief Judge.

Defendant, Jeffrey Clinton Raines, appeals from his jury conviction for distribution of heroin in violation of 21 U.S.C. § 841(a)(1) (1970). He was sentenced to five years in prison and to a consecutive three-year special parole term pursuant to 21 U.S.C. § 841(b)(1) (1970). The sole contention raised by the defendant on this appeal is that the District Court[1] erred in refusing to suppress a quantity of marked currency and the defendant's incriminating admissions obtained by a government agent upon being invited into defendant's home by a ruse of posing as a mutual friend of the defendant's heroin distributee who had been arrested and had implicated the defendant earlier the same evening. We affirm.

On March 7, 1975, an undercover agent of the Minnesota Bureau of Criminal Apprehension who had been supplied with marked government currency, purchased three grams of heroin from James Pierce at Pierce's residence in White Bear Lake, Minnesota, and immediately arrested Pierce. Pierce identified his source to be Michael Longville. Longville was promptly arrest-

---

* The Honorable James H. Meredith, Chief Judge, United States District Court for the Eastern District of Missouri, sitting by designation.

1. The Honorable Edward J. Devitt, Chief Judge, United States District Court for the District of Minnesota.

ed and the sum of $230 of the original $830 in marked currency was recovered in a search of Longville's home. Thereafter, Longville identified his source to be the defendant, an acquaintance who worked at the same industrial plant. When Longville was interviewed by Agent John Boulger, a Minneapolis policeman assigned to the Federal Drug Enforcement Administration (DEA) Task Force, he admitted that earlier the same evening he had purchased the heroin from the defendant with some of the marked currency and had returned to the defendant two grams of heroin unsold.

At approximately 1:30 a. m. on March 8, after Pierce and Longville had been incarcerated, Agent Boulger went to Raines' residence to investigate whether Raines possessed heroin and any of the marked currency. Raines was at home caring for his infant child while his wife was away attending a pregnant friend. Agent Boulger later testified during the suppression hearing, that while several officers were positioned nearby, he had personally knocked on Raines' front door and posed as Longville's friend, asking through the door whether Raines was acquainted with Longville. Raines answered that he was and Agent Boulger informed him that Longville had been arrested. Raines invited Agent Boulger inside and quickly asked what Longville had been arrested for. Agent Boulger told Raines the charge against Longville was possession of heroin, which information understandably appeared to unnerve Raines. Agent Boulger than revealed his official identity and told Raines he believed marked currency and heroin were on the premises. At this point, as many as four additional officers entered the house through the same door with weapons concealed.

Agent Boulger informed Raines that the house would be guarded and other officers would apply for, or try to obtain, a search warrant. Raines later testified that he was told the officers would *obtain* a warrant, not simply *attempt* to get one. Raines responded that there was no heroin on the premises but that the money was in the bedroom, and he turned toward the bedroom to get it for them. Agent Boulger, however, paused to inform Raines that he need not surrender the money as the officers would apply for a search warrant. Raines proceeded to the bedroom with Agent Boulger and produced an envelope containing $800 from a dresser drawer. A check of serial numbers revealed that $550 of the currency was marked. Agent Boulger returned the balance and administered *Miranda* warnings to the defendant. Thereafter, when Raines was asked if he had any money in his pockets, he produced an additional $50 in marked currency that accounted for all the $830 originally disbursed. The defendant also admitted that Longville had given him the marked currency along with two grams of unsold heroin but Raines claimed he had returned the heroin to his source. He also admitted that he had been dealing in heroin for two months, but refused to identify his source because of fear for his personal safety. The agents then departed, allowing him to turn himself in to the police the next day without escort. Raines later denied making the admissions and claimed he never dealt in heroin.

On this appeal, the defendant contends that all evidence procured in his home must be suppressed as the fruit of an unlawful police entry. He argues that the ruse employed by Agent Boulger to coax an invitation inside was an unreasonable intrusion prohibited by the Fourth Amendment and that Agent Boulger and the other officers failed to observe the common law obligation of a government agent, codified in 18 U.S.C. § 3109 (1970),[2] to announce his iden-

2. The statute provides:

*Breaking doors or windows for entry or exit*
The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authori-

ty and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.
In *Miller v. United States*, 357 U.S. 301, 306, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958), the Su-

tity and purpose before breaking into a private home. Secondly, the defendant contends that the agents' intrusion into his home under the circumstances coerced him into incriminating himself and consenting to a warrantless search in violation of his rights under the Fourth and Fifth Amendments. The District Court, after an evidentiary hearing, rejected these claims. Agent Boulger's invited entry into the defendant's home, though obtained by ruse, was not unlawful. The officers' acquiescence thereafter in the defendant's spontaneous surrender of inculpatory evidence was not a search or seizure and the defendant's voluntary admissions were not coerced.[3]

## I. UNLAWFUL ENTRY.

The defendant contends that Agent Boulger's entry by ruse into his home was improper, that all evidence procured thereby was tainted and that it must be suppressed under *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). He acknowledges that under *Lewis v. United States*, 385 U.S. 206, 211, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966), a government agent may pose as a willing buyer to gain consensual entry into a private home to purchase narcotics and thereafter use the purchase as

evidence against the seller without constitutionally vitiating an otherwise lawful prosecution. However, the defendant contends that the ruse practiced by Agent Boulger in the instant case differs from that in *Lewis* and requires a different result.

The difference, he maintains, is that Agent Boulger's announced purpose for appearing at the door, and the defendant's purpose for inviting him inside, were entirely lawful. They sought to discuss the fate of a mutual friend. In *Lewis*, however, the mutual purpose shared by the defendant and the undercover agent was to consummate an illegal sale of narcotics. The Government responds that Agent Boulger's ruse was not unrelated to the defendant's criminal conduct. Agent Boulger represented himself to be a mutual friend of one of the defendant's drug associates and truthfully told the defendant that the associate had been arrested. The defendant promptly invited the agent inside, apparently to learn whether the arrest was related to his narcotics dealing.

In our view, the defendant's attempt to distinguish between types of deception is without substance. Though the Supreme Court of the United States has not had occasion to decide a similar case,[4] we are of

---

preme Court held that though § 3109 deals only with entry to execute a search warrant, the validity of a federal officer's entry to effect an arrest without a warrant "must be tested by criteria identical with those embodied in" the statute. *Sabbath v. United States*, 391 U.S. 585, 588, 88 S.Ct. 1755, 1757, 20 L.Ed.2d 828 (1968); *Wong Sun v. United States*, 371 U.S. 471, 482–84, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

**3.** The defendant's contention that the agents, upon entering his home, lacked probable cause to arrest him without a warrant or to obtain an arrest warrant before entering, is not well taken. He cannot seriously contend that Agent Boulger, having interviewed Michael Longville the same evening, lacked an articulable and objective basis for reasonable suspicion that criminal conduct was afoot in the defendant's home, leading him to investigate further by going there. *See Adams v. Williams*, 407 U.S. 143, 145, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). No more was required. Moreover, the facts do not preclude a finding that, upon entering, the officers had probable cause for a search and subsequent arrest.

**4.** In *Sabbath v. United States*, 391 U.S. 585, 590 n. 7, 88 S.Ct. 1755, 1758, 20 L.Ed.2d 828 (1968), the Court held that 18 U.S.C. § 3109 proscribes an unannounced intrusion into a dwelling by opening a closed but unlocked door, but did "not deal * * * with entries obtained by ruse, which have been viewed as involving no 'breaking.'" Citing *Smith v. United States*, 357 F.2d 486, 488 n. 1 (5th Cir. 1966); *Leahy v. United States*, 272 F.2d 487, 489 (9th Cir. 1959), cert. dismissed, 364 U.S. 945, 81 S.Ct. 465, 5 L.Ed.2d 459 (1961).

Similarly, in *United States v. Hutchinson*, 488 F.2d 484 (8th Cir. 1973), cert. denied sub nom. *Ennis v. United States*, 417 U.S. 915, 94 S.Ct. 2616, 41 L.Ed.2d 219 (1974), this court upheld an agent's reentry following his initial entry that had been accomplished using a disguised identity. However, the court had no need to determine "the implications of an entry by ruse" for the reason that the agent's original entry was lawful under *Lewis v. United States*, *supra*, and "no independent deception was practiced in reentering" after the agent's brief absence. 488 F.2d at 488.

the view that Agent Boulger's entry by consent, though obtained by ruse, did not interfere with the defendant's Fourth Amendment rights and did not taint the evidence procured thereafter in the defendant's home. *United States v. Syler*, 430 F.2d 68 (7th Cir. 1970). As stated in *United States v. Glassel*, 488 F.2d 143, 145 (9th Cir. 1973), *cert. denied*, 416 U.S. 941, 94 S.Ct. 1945, 40 L.Ed.2d 292 (1974):

> [A]n officer may legitimately obtain an invitation into a house by misrepresenting his identity * * *. If he is invited inside, he does not need probable cause to enter, he does not need a warrant, and, quite obviously, he does not need to announce his authority and purpose. Once inside the house, he cannot exceed the scope of his invitation by ransacking the house generally, * * * but he may seize anything in plain view.

If an entry by ruse would not prevent an officer from carrying out a plain view search, it follows that he may engage in other police activity, such as that undertaken in the instant case, but otherwise prohibited where he is entitled to be.

The defendant's reliance upon *Gouled v. United States*, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647 (1921), and *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 1755, 20 L.Ed.2d 828 (1963), in support of his broad assertion that police entries by ruse are generally unlawful, is unjustified. Neither case states such a broad proposition and neither involved factual circumstances similar to the instant case.[5] On the contrary, the Supreme Court has more recently held that minimal police deception in criminal investigation, such as that practiced here,

does not run counter to the protections afforded by the Fourth Amendment and that "the particular circumstances of each case govern the admissibility of evidence obtained by strategem or deception." *Lewis v. United States*, 385 U.S. 206, 208, 87 S.Ct. 424, 426, 17 L.Ed.2d 312 (1966). *See also Lopez v. United States*, 373 U.S. 427, 437–38, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963).

■ Further, Agent Boulger's failure to announce his authority and purpose before entering the defendant's home did not violate 18 U.S.C. § 3109. *United States v. Beale*, 436 F.2d 573 (5th Cir. 1971), *rev'd on rehearing*, 445 F.2d 977 (5th Cir.), *cert. denied*, 404 U.S. 1026, 92 S.Ct. 697, 30 L.Ed.2d 676 (1972). A police entry into a private home by invitation without force, though the invitation be obtained by ruse, is not a breaking and does not invoke the common law requirement of prior announcement of authority and purpose, codified in § 3109. *United States v. Hill*, 508 F.2d 345, 347 (5th Cir.), *cert. denied*, 422 U.S. 1009, 95 S.Ct. 2633, 45 L.Ed.2d 672 (1975) (approving execution of a search warrant following a ruse entry); *United States v. Beale, supra* (approving a warrantless arrest following a ruse entry); *Leahy v. United States*, 272 F.2d 487, 489–90 (9th Cir. 1959), *cert. dismissed*, 364 U.S. 945, 81 S.Ct. 465, 5 L.Ed.2d 459 (1961) (approving execution of an arrest warrant following a ruse entry); Annot., 21 A.L.R.Fed. 820, 877–84 (1974); *see Sabbath v. United States*, 391 U.S. 585, 590 n. 7, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968); *Dickey v. United States*, 332 F.2d 773, 777–78 (9th Cir.), *cert. denied*, 379 U.S. 948, 85 S.Ct. 444, 13 L.Ed.2d 545 (1964) (approving a warrantless arrest following a ruse entry on ground

---

**5.** In *Gouled*, a business acquaintance of the defendant, acting under orders of federal officers, obtained entry into the defendant's office by falsely representing that he wished to pay a social visit; but in the defendant's absence, he secretly searched the office and seized incriminating private papers. The Court held the general ransacking in the defendant's absence to be a Fourth Amendment violation. 255 U.S. at 305–06, 41 S.Ct. 261.

In *Wong Sun, supra*, 371 U.S. at 482–83, 83 S.Ct. 1755, the Court noted that a government agent's misrepresentation of his mission at the door of a defendant's place of business and residence, and failure to dispel the occupant's misapprehension created by the ruse, had the effect of eliminating the sure inference of consciousness of guilt that might otherwise have resulted from the occupant's flight from the door. The Court went on to hold that the defendant was arrested without probable cause and that the evidentiary fruits of the arrest, whose taint was unattenuated, must be suppressed.

that admission of evidence seized incident thereto was not plain error). *Contra, Bowers v. Coiner*, 309 F.Supp. 1064 (S.D.W.Va. 1971).

## II. UNLAWFUL COERCION FOLLOWING THE ENTRY.

The defendant contends that the marked currency and incriminating admissions procured by the government agents upon entering his home must be suppressed on two additional grounds. He argues that he was unlawfully induced to consent to a search and coerced into incriminating himself in violation of his rights under the Fourth and Fifth Amendments. However, neither argument is supported by the record nor requires extensive discussion.

 Defendant's first contention is that Agent Boulger's comment that the officers would guard the house and apply for a search warrant was an unjustified coercive threat that a warrant would be in fact be obtained when, he argues, the officers lacked probable cause to obtain a search warrant. Thus, the defendant maintains that under the circumstances he was induced to consent to a search in violation of his Fourth Amendment rights. However, the argument rests upon a twofold misconception of the facts. The testimony adduced in the suppression hearing reveals that Agent Boulger did not threaten to obtain a search warrant; he merely stated that a warrant would be applied for and that Raines need not produce the marked currency without one. The agent's assertion under the circumstances was not im-

permissibly coercive, *see United States v. Culp*, 472 F.2d 459, 461–62 (8th Cir.), *cert. denied*, 411 U.S. 970, 93 S.Ct. 2161, 36 L.Ed.2d 692 (1973); *cf. Bumper v. North Carolina*, 391 U.S. 543, 550, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968), and in any event, what transpired in the defendant's home in the early hours of March 8 was not a search or seizure within the meaning of the Fourth Amendment,[6] although the agents certainly had probable cause to secure a search warrant and the right to seize and guard the premises while so doing. The defendant's surrender of incriminating marked currency and admission of participation in the crime were entirely volunteered.[7]

 The Fourth Amendment protects only against unreasonable searches and seizures; it does not prohibit the police from acquiescing, as here, in a defendant's spontaneous, uncoerced offer to incriminate himself by supplying physical evidence and admitting participation in crime. Here, the agents lawfully, though by ruse, entered the defendant's home and, once inside, witnessed the defendant's voluntary relinquishment of incriminating evidence. No probable cause or formal consent is required in addition to enable the Government to use the evidence against the accused at trial. To hold otherwise would permit a suspect to frustrate police investigation by quickly surrendering incriminating evidence before government agents are able to secure a search warrant, administer *Miranda* warnings or conduct a search.

Finally, the defendant contends that as soon as Agent Boulger revealed his identity, the initial conversation was transformed

---

**6.** Without a search or seizure, the totality of the circumstances Fourth Amendment analysis of *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) and *United States v. Watson*, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598, 44 U.S.L.W. 4112 (1976), to determine whether consent to search was voluntarily and freely given, is inapt.

**7.** Although the subsequent entry of other government agents in addition to Agent Boulger could have increased the defendant's anxiety, our review of the record does not reveal unduly coercive circumstances. Rather, the

testimony in the suppression hearing, including that of the preliminary hearing incorporated into the suppression hearing by stipulation, suggests that the encounter was relatively cordial and informal. The District Court's implicit determination that no unlawful coercion occurred, based upon the testimony and assessment of credibility, is supported by substantial evidence and will not be disturbed. *Mullins v. United States*, 487 F.2d 581, 589 (8th Cir. 1973); *Gullett v. United States*, 387 F.2d 307, 309 (8th Cir. 1967), *cert. denied*, 390 U.S. 1044, 88 S.Ct. 1645, 20 L.Ed.2d 307 (1968).

into improper custodial interrogation and that all evidence procured before the defendant received *Miranda* warnings must be suppressed. Moreover, the defendant contends that even the inculpatory admissions made by him *following* the administration of *Miranda* warnings must be suppressed as they were coerced under the circumstances in violation of his Fifth Amendment privilege against compelled self-incrimination.

 We find no merit in these contentions. Even if we assume, without deciding, that the defendant was in custody at the time he volunteered the marked currency,[8] the record reveals that he was not interrogated prior to receiving *Miranda* warnings, and that after receiving the warnings he freely and voluntarily responded to questions and admitted participation in the crime. The Fifth Amendment does not bar the use of physical evidence or admissions volunteered by a defendant without interrogation or "compelling influence." *Miranda v. Arizona*, 384 U.S. 436, 478, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *accord, United States v. Webb*, 533 F.2d 391, at 394 (8th Cir. 1976); *United States v. Martin*, 511 F.2d 148, 150–51 (8th Cir. 1975). The evidence obtained by government agents in the defendant's home on May 8, 1975, was properly admitted.

The judgment of conviction is affirmed.

---

8. Though the defendant had not been informed that he was under formal arrest when he produced the currency, Agent Boulger later testified that the defendant would not have been permitted to leave the house if he had attempted to do so. However, he was not taken to the police station that night. He was permitted to surrender to the police voluntarily the following day.