**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Julie GOELLER, Defendant and Appellant.**

**Cr. No. 611.**

Supreme Court of North Dakota.

March 7, 1978.

Rehearing Denied April 13, 1978.

Michael O. McGuire, of Schuster, McGuire & Anderson, Ltd., Fargo, for defendant and appellant.

John T. Paulson, State's Atty., Valley City, for plaintiff and appellee.

PEDERSON, Justice.

Julie Ann Goeller appeals a conviction by the Barnes County Court With Increased Jurisdiction (Judge George E. Duis of the Cass County Court presiding) of possession of a controlled substance, a Class A misdemeanor (§ 19–03.1–23(3), NDCC). A jury trial had been waived. We affirm the conviction.

Insofar as they are pertinent to this appeal, there are few significant factual disputes. Goeller, along with three other persons (Hillborn, Seaborn and Anderson), was present in the common kitchen area of a multiple dwelling (213 College Street Southeast) in Valley City, when two North Dakota Crime Bureau agents entered and observed marijuana on the kitchen table. All four were charged with possession of the marijuana; Goeller, Seaborn and Hillborn were convicted. The charge against Anderson was dismissed.

One of the Crime Bureau agents had reported to the Valley City police that he had previously purchased a controlled substance from Seaborn at this multiple dwelling and that he had been invited to return that night for a party. As a result, a police captain (Kracht) obtained a warrant for a search of the house at 213 College Street Southeast.

At about 11:00 p. m., members of the Valley City Police Department and the two agents of the Crime Bureau went to the residence at 213 College Street Southeast. A radio transmitter was concealed on the person of one of the agents. While the Valley City officers remained outside with the search warrant, the two agents approached the residence and sought entry. They did not identify themselves as law enforcement agents when the door was opened by Hillborn. They, instead, asked for Seaborn. Hillborn told them that Seaborn was present, then, as he states, "I yelled for Sheldon as I was running upstairs. I was going up the stairs to get a pair of shoes on." The agents then walked into the kitchen area. One of the agents recounts:

"When I entered the kitchen one of the individuals, I can't remember right now, had a bag of marijuana sitting on the table between Sheldon Seaborn and herself and was rolling a marijuana cigarette. There were two females sitting on opposite sides of the table."

"At that point Miss Goeller stated that she recognized me and . . . [the other agent] called the police officers

from Valley City that were waiting outside by radio and had them enter the premises."

Without further delay, the Valley City officers entered the residence, arrested the individuals present, and began a search of the premises. The officers testified that all those arrested were read the rights as contained on a "Miranda warning card." At some point during the arrest and search, Julie Goeller said that it was her marijuana and that they should leave the other people alone.

One of the agents testified that the execution of the search warrant by the Valley City police was delayed because they (the agents) wanted to try to make another purchase of a controlled substance from Sheldon Seaborn in order "to secure the case."

Goeller took the stand in her own behalf and disputed the testimony that she was given the Miranda warning. She said: "No, I was never read my rights. I asked Bernie Kracht to read me my rights and he refused." She does not deny making the statement that the marijuana was hers, but she says that it was made facetiously. She testified that when Captain Kracht asked her, "And what about this marijuana? Is this yours, Julie?" She said that her response was, "Oh, sure, Bernie, it's all mine."

When all testimony was concluded, and immediately prior to finding Goeller guilty, the judge made the following statements:

". . . Miss Goeller if you said it was facetiously or not your statements were made and they are convincing to me viewed in the light of the officer's testimony.

"The only part of this matter that disturbs me at all was the dispute as to whether the Miranda Warnings were given and it is true that there was a good deal of confusion but the officers testified that they did. They are trained officers and I can't help but believe that they did give these warnings and there is a dispute in the evidence."

We first consider the question of whether the marijuana, which was plainly visible to

the agent who gained entry by deception, was properly received as evidence or whether it should have been excluded as the product of an unconstitutional search.

■ We conclude, first of all, that the entry, while made by deception, did not violate Goeller's Fourth Amendment rights. Goeller argues, in her brief, that forcible and stealthy entry into an abode is prohibited by the Fourth Amendment. She then questions why trickery and deceit should stand on any higher ground. That question is answered, in part, by the often-quoted case of *Sorrells v. United States*, 287 U.S. 435, 441, 53 S.Ct. 210, 212, 77 L.Ed. 413 (1932), where the United States Supreme Court said:

"Artifice and stratagem may be employed to catch those engaged in criminal enterprises."

The employment of such means to ensnare the criminal has limits, however. The Supreme Court, in *Hoffa v. United States*, 385 U.S. 293, 301, 87 S.Ct. 408, 413, 17 L.Ed.2d 374 (1966) stated:

"The Fourth Amendment can certainly be violated by guileful as well as by forcible intrusions into a constitutionally protected area." [Cites omitted.]

In a case with some similarities to that before this Court, the Eighth Circuit Court of Appeals held that the entry of an agent into the defendant's home by pretending to be a mutual friend of one of defendant's drug associates, "did not interfere with the defendant's Fourth Amendment rights and did not taint the evidence procured thereafter in the defendant's home." *United States v. Raines*, 536 F.2d 796, 800 (8th Cir. 1976), citing *United States v. Syler*, 430 F.2d 68 (7th Cir. 1970). The *Raines* court went on to quote from *United States v. Glassel*, 488 F.2d 143, 145 (9th Cir. 1973), *cert. denied*, 416 U.S. 941, 94 S.Ct. 1945, 40 L.Ed.2d 292 (1974):

"[A]n officer may legitimately obtain an invitation into a house by misrepresenting his identity . . . . If he is invit-

ed inside, he does not need probable cause to enter, he does not need a warrant, and, quite obviously, he does not need to announce his authority and purpose. Once inside the house, he cannot exceed the scope of his invitation by ransacking the house generally, . . . but he may seize anything in plain view."

The defendant here relies upon two very old and distinguishable prohibition cases: *Fraternal Order of Eagles, No. 778 v. United States*, 57 F.2d 93 (3d Cir. 1932), and *United States v. Mitchneck*, 2 F.Supp. 225 (M.D.Pa.1933). Both of those cases rely upon the following statement:

"A search and seizure following an entry into the house or office of a person suspected of crime by means of fraud, stealth, social acquaintance, or under the guise of a business call are unreasonable and violate the Fourth Amendment." 57 F.2d at 94, and 2 F.Supp. at 226.

The source of this statement is *Gouled v. United States*, 255 U.S. 298, 306, 41 S.Ct. 261, 264, 65 L.Ed. 647 (1921),[1] where it is stated:

". . . whether entrance to the home or office of a person suspected of crime be obtained by a representative of any branch or subdivision of the Government of the United States by stealth, or through social acquaintance, or in the guise of a business call, and whether the owner be present or not when he enters, any search and seizure *subsequently and secretly made in his absence*, falls within the scope of the prohibition of the Fourth Amendment . . . ." [Emphasis added.]

Both *Eagles, supra*, and *Mitchneck, supra*, neglected to recognize the significance of the emphasized language in *Gouled, supra*. The *Gouled* court equated stealth with force and coercion. *Gouled v. United States*, 255 U.S. at 305, *supra*. The stealth referred to lies not in the *entry* but in a later *surreptitious* search.

---

1. The *Mitchneck* court incorrectly attributes the statement to *Weeks v. United States*, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1915).

*Fraternal Order of Eagles, supra,* has never been directly overruled by the Third Circuit, but it has been repeatedly qualified and distinguished in other circuits. *United States v. Bush,* 283 F.2d 51 (6th Cir. 1960), provides an example.

After reviewing, among others, the same cases which are now cited by Goeller, the *Bush* court concluded:

"As to misrepresentations made to Mrs. Bush, we are of the view that the only misrepresentation was that the agent hid his identity as an officer and posed as a member of the general public. Evidence obtained by law enforcement officers, using the subterfuge of hiding their identity in order to pose as members of the general public, has consistently been held to be admissible." [Cites omitted.] *United States v. Bush,* 283 F.2d at 53, *supra.*

In *Lewis v. United States,* 385 U.S. 206, 211, 17 L.Ed.2d 312, 87 S.Ct. 424, 427, (1966), the United States Supreme Court was faced with a situation where an undercover narcotics agent falsely identified himself to the defendant as a marijuana dealer, and succeeded in being invited into the defendant's home, where drug purchases were made. In that case the Court held that:

". . . when, as here, the home is converted into a commercial center to which outsiders are invited for purposes of transacting unlawful business, that business is entitled to no greater sanctity than if it were carried on in a store, a garage, a car, or on the street. A government agent, in the same manner as a private person, may accept an invitation to do business and may enter upon the premises for the very purposes contemplated by the occupant."

It is not necessary for us to say that, in the instant case, Hillborn and Seaborn had converted their place of abode into a "commercial center." The Crime Bureau agents stated that they returned because of an invitation to a *party,* not an invitation to transact any illegal business. We hold that the agents did not violate Goeller's Fourth Amendment rights.

"Were we to hold the deceptions of the agent in this case constitutionally prohibited, we would come near to a rule that the use of undercover agents in any manner is virtually unconstitutional *per se.* Such a rule would, for example, severely hamper the Government in ferreting out those organized criminal activities that are characterized by covert dealings with victims who either cannot or do not protest." *Lewis v. United States,* 385 U.S. at 210, 87 S.Ct. at 427, *supra.*

The Crime Bureau agents in this case may have traveled to the very boundary of the rights accorded under the Fourth Amendment; however, we do not believe they have crossed that boundary.

Goeller also asserts that the agents were not entitled to seize the marijuana under the doctrine of "plain view." See *State v. Meadows,* 260 N.W.2d 328 (N.D.1977); *State v. Matthews,* 216 N.W.2d 90 (N.D.1974); *Harris v. United States,* 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); *Ker v. California,* 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), annotated, 29 L.Ed.2d 1067. Goeller's attempt to read *United States v. Goldenstein,* 456 F.2d 1006 (8th Cir. 1972), and *Davis v. United States,* 327 F.2d 301 (9th Cir. 1964), which require the contraband to be within the officer's view "at the moment of intrusion," as support for excluding any contraband not within the agents' view as they were on the threshold, has no merit. Both of those cases require the "find" to be inadvertent as opposed to something searched for. So long as the agents remained in an area where they were invited, they were not required to close their eyes to the contraband. If an officer has a right to be in a position to view the contraband, he likewise has the right to seize the contraband. *Harris v. United States,* 390 U.S. at 236, 19 L.Ed.2d at 1069, 88 S.Ct. at 993, *supra.* See also, *Ker v. California,* 374 U.S. at 43, 10 L.Ed.2d at 743, 83 S.Ct. at 1643, *supra.*

While Goeller insists that the agents had entered the dwelling with the intent of

searching it, the record makes clear the fact that the entry was made with the intent of attempting a "buy." The fact that the officers outside had armed themselves with a search warrant, and did intend a *later* search, has no bearing upon the intent behind the initial entry by the Crime Bureau agents.

■ Because we have concluded that the North Dakota Crime Bureau agents did not violate Goeller's Fourth Amendment rights when they entered the Valley City dwelling, and because we find that the marijuana was within plain view of those agents when it was seen upon the kitchen table, we conclude that those agents were entitled to summon the Valley City police officers, who were waiting outside, into the residence. The agents were witnesses to the ongoing commission of a crime and it was within their power to summon aid in order to make arrests and secure the evidence.

Because the contraband which was introduced as evidence against Goeller was properly seizable, we need not and do not consider the issues raised by Goeller concerning the issuance and execution of the search warrant.

■ Goeller argues that the incriminating statements she was found to have made should have been suppressed. She bases this argument, in part, upon the assertion of an illegal search and seizure and, in part, upon the assertion that the *Miranda* warnings were not given to her. We have previously found that there was no illegal search or seizure involved in acquiring the contraband which was used as evidence against her. The trial judge specifically stated that he believed the testimony of the officers when they stated that they had read the *Miranda* warnings to Goeller before she made the incriminating statements. We therefore hold that her statements were properly made a part of the evidence and were not subject to suppression. Goeller's contention that the statements were made facetiously was not accepted by the trial court. The court clearly indicated that the statements contributed to a finding of guilt. A conviction based on conflicting evidence will not be disturbed where there is substantial evidence to support the trial court's decision. *State v. Schuler*, 243 N.W.2d 367 (N.D.1976). See also, *State v. Loucks*, 209 N.W.2d 772 (N.D.1973). The trial court was not bound to accept Goeller's exculpatory explanation of her admission. See, *State v. Lange*, 255 N.W.2d 59 (N.D.1977); *United States v. Wilkerson*, 453 F.2d 657 (8th Cir. 1971), *cert. denied, Wilkerson v. United States*, 405 U.S. 1071, 92 S.Ct. 1521, 31 L.Ed.2d 804 (1972). In determining if there is substantial evidence to support the trial court's decision, we view the evidence in the light most favorable to the verdict. See, *State v. Moe*, 151 N.W.2d 310 (N.D.1967).

■ Goeller finally argues that she was denied the right to bail and to effective counsel at trial because she was detained from 11:30 p. m. on Wednesday, March 30, 1977, until 1:45 p. m. the following Friday, April 1, 1977, without being allowed to contact counsel. We cannot agree that Goeller's Sixth Amendment right to counsel was violated for two reasons: (1) the incriminating statements which she was found to have made were made at the time of her arrest, and not pursuant to interrogation after she had made a request for counsel, and (2) the 38-hour period of time during which she was incarcerated without benefit of counsel does not, under all circumstances, present a *per se* violation of the prohibition against unnecessary delay (Rule 5(a), NDRCrimP). Goeller acknowledges that the record gives absolutely no clues as to why over 38 hours elapsed before her first appearance. She concludes that she was effectively denied bail for reasons of prejudice and harassment, contrary to Section 6 of the North Dakota Constitution. We cannot base the reversal of a conviction upon the mere assumption, by the defendant, that the motives of the Valley City Police Department were improper.

The judgment of conviction is affirmed.

ERICKSTAD, C. J., and VOGEL, and SAND, JJ., ILVEDSON, D. J., concur.

ILVEDSON, District Judge, sitting in place of PAULSON, J., disqualified.