STATE of North Dakota, Plaintiff and Appellee,

v.

Kenneth H. KOSKELA, Defendant and Appellant.

Crim. No. 881.

Supreme Court of North Dakota.

Jan. 27, 1983.

Robert G. Hoy, State's Atty., and Bruce D. Quick, Asst. State's Atty., Fargo, for plaintiff and appellee; argued by Bruce D. Quick, Fargo.

Edward J. Murphy, Fargo, for defendant and appellant.

PEDERSON, Justice.

In a trial to the court, Koskela was convicted of robbery in violation of § 12.1–03–01 and § 12.1–22–01, NDCC. Koskela appealed from the judgment of conviction,[1] claiming that police officers lacked probable cause to stop him and that discovery of evidence was the result of an unreasonable search and seizure prohibited by the Fourth and the Fourteenth Amendments to the United States Constitution and by Section 8 of the North Dakota Constitution. We affirm.

On November 12, 1981, Fargo Police Officer Peter Graber was on a routine patrol when he heard, over his police radio, that the White Drug Store in Fargo had been robbed and drugs had been stolen. The call described two armed male suspects, one was wearing a dark-colored ski mask, a dark jacket, blue jeans, and tennis shoes, and the other suspect was wearing a dark-colored ski mask, a light-colored jacket, blue jeans, brown work boots, and had one or two days' growth of beard. The call gave no description of the height or weight of the suspects. Police officers were also told that the suspects had fled in a car but they were given no description of the car.

---

1. Koskela filed a motion to suppress the evidence obtained in the search which was denied by the court.

Officer Graber immediately suspected that his nephew, Koskela, was involved in the robbery, so he drove near the Koskela house and parked. He soon spotted Koskela driving towards the marked squad car. Koskela drove past the squad car and then the house. Officer Graber testified that Koskela's hair seemed disheveled and looked like "he could have just taken a hat off." Graber also testified that it was "unusual" for his nephew not to stop and talk with him or at least acknowledge his presence. Graber radioed police headquarters that he had a suspect in the robbery and followed Koskela for about ten blocks. When Koskela turned into a driveway, Graber pulled in behind him.

Koskela got out of his car and asked Graber what he wanted. Graber asked Koskela to get in the squad car. Koskela did, and Graber then said that the White Drug Store had just been robbed and that he wanted to talk to Koskela about it. Koskela became angry and got out of the car. Suddenly two other police officers in marked squad cars arrived, followed by a detective in an unmarked car. One of the police officers, Officer Kind, asked if he could look in Koskela's car and Koskela replied, "No." As the detective and Graber talked to Koskela, Officer Kind walked over to Koskela's car and saw a second man lying in the back seat. Officer Kind drew his gun, opened the door, and ordered the man out of the car. Kind searched the back seat of the car and found the stolen drugs. Both men were then arrested for armed robbery.

Koskela argues that his encounter with Graber amounted to a "seizure" within the meaning of the Fourth Amendment and, as such, violated his constitutional right to be free of unreasonable searches and seizures. The State, however, argues that Officer Graber's action did not constitute a "seizure," but instead was "police contact," allowing Graber to stop Koskela and detain him briefly for questioning upon the suspicion that he may be connected with criminal activity.

The constitutional requirement that searches and seizures be based upon an objective justification covers "all seizures of the person, including seizures that involve only a brief detention short of traditional arrest." *United States v. Mendenhall,* 446 U.S. 544, 551, 100 S.Ct. 1870, 1875, 64 L.Ed.2d 497, 507 (1980); *Terry v. Ohio,* 392 U.S. 1, 16–19, 88 S.Ct. 1868, 1877–78, 20 L.Ed.2d 889, 902–904 (1968); see generally *State v. Planz,* 304 N.W.2d 74, 78 (N.D. 1981). Accordingly, if Koskela was "seized" when Graber and the other police officers approached him and asked questions of him, the police officers' conduct was constitutional only if they "reasonably suspected" Koskela of wrongdoing. *Mendenhall, supra,* 446 U.S. at 552, 100 S.Ct. at 1876, 64 L.Ed.2d at 508.

A "seizure" occurs when the officer, by means of physical force or show of authority, has in some way restrained the liberty or the movement of a citizen. *Terry v. Ohio, supra,* 392 U.S. at 19, n. 16, 88 S.Ct. at 1879, n. 16; *Mendenhall, supra,* 446 U.S. at 553, 100 S.Ct. at 1877, 64 L.Ed.2d at 509. As the United States Supreme Court found in *Mendenhall:*

"[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Mendenhall, supra,* 446 U.S. at 554, 100 S.Ct. at 1877, 64 L.Ed.2d at 509.

See also *Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979).

In *Mendenhall,* the defendant arrived at the Detroit Airport on a commercial airline flight from Los Angeles. As she disembarked from the airplane two Drug En-

forcement Administration agents determined that her behavior fit their "drug courier profile." The agents approached her, identified themselves as federal agents, and asked to see her identification and airline ticket. This initial contact eventually led to her arrest for possession of heroin. The Court determined that the agents' conduct did not constitute a "seizure." *United States v. Mendenhall, supra,* 446 U.S. at 555, 100 S.Ct. at 1877, 64 L.Ed.2d at 510.

Similarly, in *Terry v. Ohio, supra,* a police officer observed two men on a street corner walk back and forth in an identical route, pausing briefly to stare in a store window. Suspecting the men of "casing a job," the officer approached them, identified himself as a policeman, and asked their names. When they "mumbled something," the officer frisked one of the men and found a pistol. The men were later convicted of carrying concealed weapons. The Court determined that until the officer frisked the defendant, no "seizure" had occurred. *Terry v. Ohio, supra,* 392 U.S. at 19, 88 S.Ct. at 1879, 20 L.Ed.2d at 905.

■ On the facts of this case, we cannot find that a "seizure" of Koskela occurred during his initial encounter with Graber. Koskela knew his uncle well and had visited with Graber while he was in uniform and on patrol. Graber requested, but did not demand, that Koskela answer a few questions. Koskela felt free to leave Graber's squad car and to refuse to answer his questions.

■ Although we have concluded that the initial encounter between Koskela and Graber did not constitute a seizure, it is arguable that when the other police officers arrived a "seizure" did occur. The threatening presence of several police officers could give the reasonable impression that Koskela was not free to leave. *Mendenhall, supra;* see also *United States v. Wylie,* 569 F.2d 62, 68 (D.C.Cir.1977), *cert. denied* 435 U.S. 944, 98 S.Ct. 1527, 55 L.Ed.2d 542

(1978). It is undisputed that several uniformed police officers simultaneously converged at the scene. Even though Koskela may have been physically free to drive away when the additional officers arrived, we find that the actions of the officers constituted sufficient show of authority to restrain Koskela's freedom of movement. Thus we conclude that the police action here amounted to a "seizure" within the meaning of the Fourth Amendment as interpreted by *Terry* and *Mendenhall.*[2]

To determine whether or not the seizure of Koskela violated his Fourth Amendment rights we must inquire "whether the officer's action was justified at its inception" and "whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *United States v. Nicholas,* 448 F.2d 622, 624 (8th Cir.1971).

> To justify a seizure, the police officer " . . . must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. . . . [I]n making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" *Terry, supra,* 392 U.S. at 21, 88 S.Ct. at 1880, 20 L.Ed.2d at 906.

■ When judged against this standard, Officer Graber was justified in initially stopping Koskela for questioning. Graber possessed the following facts at the time he made the stop:

(1) an armed robbery, perpetrated by two male suspects, had just occurred;

(2) the suspects fled in a car;

(3) Koskela had a lengthy criminal record, including convictions for armed robbery, and had a history of drug abuse;

---

**2.** No testimony was presented as to whether the additional police officers used their flashing red lights when they arrived at the scene. Such conduct could also indicate a "seizure"

within the meaning of *Terry.  United States v. Nicholas,* 448 F.2d 622, 624 n. 3 (8th Cir.1971); *Carpenter v. Sigler,* 419 F.2d 169 (8th Cir.1969).

(4) Koskela had been paroled only three months earlier and was unemployed;

(5) Koskela had explained his mode of operation to Graber as follows: he used an accomplice, carried a weapon, wore a mask, used his own car so that he would not be stopped for driving a stolen vehicle, and, after the robbery, Koskela would have his accomplice lie down in the back seat of the car because the police would be looking for two suspects;

(6) Koskela appeared to be returning home until he saw Graber. Koskela then drove past Graber and did not acknowledge Graber's presence, suggesting furtive behavior on Koskela's part;

(7) Koskela's hair appeared disheveled as though he had just removed a hat. Koskela generally took a great deal of pride in his appearance, including keeping his hair well combed.

Based upon these facts, we find that Graber was acting upon specific and articulable facts rather than a mere generalized suspicion. The seizure was therefore justified and no violation of Koskela's Fourth Amendment rights occurred.

■ Koskela argues that discovery of the stolen drugs was the result of an illegal search of his car prohibited by the Fourth Amendment. A Fourth Amendment "search," as initially defined by the courts, did not occur unless the police intruded into a "constitutionally protected area." *Silverman v. United States,* 365 U.S. 505, 512, 81 S.Ct. 679, 683, 5 L.Ed.2d 734, 739 (1961); *State v. Planz,* 304 N.W.2d 74, 78 (N.D. 1981). The United States Supreme Court later shifted its focus from determining whether or not a given "area" is constitutionally protected to determining whether or not a person has a "reasonable expectation of privacy." *Katz v. United States,* 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576, 582 (1967); *Terry v. Ohio,* 392 U.S. 1, 9, 88 S.Ct. 1868, 1873, 20 L.Ed.2d 889, 899 (1968); *State v. Planz, supra,* at 79.

■ We cannot conclude that Koskela had a reasonable expectation of privacy as to the back seat of his car. His accomplice, Matthew Rissi, was clearly visible without entering the car and the car was parked in an open place. In light of these circumstances, Koskela's claim that Rissi and the contraband were located in an area in which he reasonably expected to be accorded the "sanctity associated with the privacy the Fourth Amendment seeks to protect" is unfounded. *State v. Planz, supra,* at 80. Because Rissi and the contraband were not protected by a reasonable expectation of privacy, he and the contraband were not discovered pursuant to a "search" within the meaning of the Fourth Amendment.[3]

Although we have found that the contraband in the back seat of Koskela's car was not discovered through a Fourth Amendment search, we must nevertheless determine if the seizure of that contraband violated the Fourth Amendment. See *State v. Planz, supra.*

■ A warrantless search and seizure is unreasonable unless it falls within one of the exceptions to the constitutional requirement that a search be conducted pursuant to a valid search warrant. *Stoner v. California,* 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964); *State v. Klevgaard,* 306 N.W.2d 185 (N.D.1981). One exception to the warrant requirement is the "plain view" doctrine. *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). When the evidence seized is in "plain view" of officers legally in a position to see it, the seizure is reasonable and no Fourth Amendment violation occurs. See *State v. Goeller,* 264 N.W.2d 472 (N.D.1978); *State v. Meadows,* 260 N.W.2d 328 (N.D. 1977).

■ Officer Kind, upon seeing Rissi lying in the back seat, drew his gun and ordered Rissi out of the car. Kind immediately arrested him. Kind then noticed a pillowcase on the floor of the back seat which, as

---

3. We note that finding a person, as opposed to discovering contraband, will not be suppressed as the "fruit of an illegal search" because the court's jurisdiction over a person is a separate issue not covered by the Fourth Amendment.

was later revealed, contained the stolen drugs. Detective Lindblad removed the pillowcase, along with a gun and two ski masks.

Because we have concluded that Officer Kind did not violate Koskela's Fourth Amendment rights when he saw Rissi, he was legitimately in a position to see the pillowcase. The initial intrusion that brought Officer Kind within "plain view" of the pillowcase is thus supported and the resulting seizure is also legitimate. See *Coolidge v. New Hampshire, supra; State v. Goeller, supra,* 264 N.W.2d at 477. Accordingly, the judgment of conviction is affirmed.

ERICKSTAD, C.J., and PAULSON and SAND, JJ., concur.

VANDE WALLE, Justice, concurring specially.

Although I believe reliance on the "plain view" doctrine for the seizure of the contraband may be technically incorrect [see *State v. Planz,* 304 N.W.2d 74 (N.D.1981)], I concur in the result reached by the majority opinion. Because Koskela had no reasonable expectation of privacy with regard to items which were visible through the window of his automobile, there was no intrusion into a constitutionally protected area and the "plain view" doctrine is not applicable. However, the officer seizing the contraband was legally in a position to seize the contraband and that seizure concerned the very item which had given the officer the requisite probable cause to arrest Koskela. Therefore, there is nothing to prohibit the seizure of the contraband. *State v. Planz, supra.*